No. 109,796

CITY OF ATWOOD, *Appellee*, v. RICHARD DAVID PIANALTO,
*Appellant.*
(350 P.3d 1048)

Opinion filed May 22, 2015.

*Daniel C. Walter*, of Ryan, Walter & McClymont, Chtd., of Norton, argued the cause and was on the briefs for appellant.

*Charles A. Peckham*, city attorney, argued the cause and was on the briefs for appellee.

The opinion of the court was delivered by

BILES, J.: Richard D. Pianalto appeals from his conviction for driving while under the influence of alcohol, arguing the evidence of that offense was the product of an illegal traffic stop. Pianalto claims the officer who initiated the stop was mistaken about the applicable speed limit because a traffic sign normally posting the

limit had been knocked to the ground. Pianalto contends the speed limit increased as a matter of law on the seemingly unposted roadway, so the officer had no basis to pull Pianalto over for speeding. We affirm his conviction.

## FACTUAL AND PROCEDURAL BACKGROUND

Early on the morning of January 1, 2012, an Atwood police officer observed Pianalto's vehicle traveling westbound on North Lake Road within the city limits. Using his radar gun, the officer checked Pianalto's speed as their vehicles passed each other. This instrument showed Pianalto traveling 28 miles per hour. The officer, a lifelong city resident, believed there was a posted 20 miles per hour speed limit on North Lake Road, so the officer activated his emergency equipment to initiate a traffic stop for a speeding violation. The officer was unaware the speed limit sign at this location had been knocked down.

During the stop, the officer developed suspicion that Pianalto was intoxicated. He administered field sobriety tests and arrested Pianalto. An evidentiary breath test showed Pianalto had a breath alcohol concentration of .148 grams of alcohol per 210 liters of breath, which is well in excess of the .08 specified by statute. See K.S.A. 2011 Supp. 8-1567. Pianalto was convicted in Atwood Municipal Court of DUI and speeding.

Pianalto appealed both convictions for a trial de novo in Rawlins County District Court, where he challenged whether the officer had reasonable suspicion for the traffic stop based on the fallen traffic sign. He argued that unless otherwise marked, the speed limit automatically increased to 30 miles per hour at the place of the stop in accordance with K.S.A. 2011 Supp. 8-1558, so Pianalto's 28 miles per hour speed did not provide the reasonable suspicion to initiate a stop for speeding. The district court denied Pianalto's motion to suppress in a written order. It stated in part:

"1. The facts are not at issue. Simply stated, the arresting officer initiated a traffic stop of [Pianalto] for travelling 28 mph in what the officer mistakenly believed was a 20 mph zone based upon his use of a radar gun. The zone was and had for more years than anyone knew been a 20 mph zone but because the 20 mph speed limit sign had been knocked down the argument is that the speed limit reverted to 30 mph. The arresting officer did not have knowledge that the

sign had been knocked down therefore making his mistake one of fact, not one of law. Had the officer known the sign had been knocked down then the argument could be made that his mistake was one of law, *i.e.*[,] did the speed limit revert to 30 mph.

"2. Although an argument could be made, and in fact was, that the speed limit did not increase to 30 mph based upon the speed limit sign having been knocked down it is not necessary to address that issue as this matter can be decided on the mistake of fact issue alone."

The district court then concluded a reasonable mistake of fact could not invalidate a traffic stop when the officer had a "reasonably articulable" suspicion the motorist was speeding and ruled that the evidence against Pianalto would not be suppressed. The court did not explicitly conclude the officer had reasonable suspicion to initiate the stop despite the mistake, but that is implicit.

After the motion to suppress was denied, Pianalto stipulated he was operating his vehicle with a breath alcohol content above the legal limit. The district court found him guilty of driving under the influence of alcohol and imposed a sentence. The district court made no findings and entered no judgment as to the speeding violation. Pianalto timely appealed.

The Court of Appeals affirmed the DUI conviction. *City of Atwood v. Pianalto*, No. 109,796, 2014 WL 642203, at *5 (Kan. App. 2014) (unpublished opinion). In doing so, the panel assumed the speed limit reverted to 30 miles per hour under K.S.A. 2013 Supp. 8-1558 when the sign was knocked down. 2014 WL 642203, at *3. Next, the panel agreed the officer's error about the speed limit was a reasonable mistake of fact, writing:

"Had [the officer] known that the speed limit sign was down but was unaware that this fact caused the speed limit to revert to 30 miles per hour, this situation would have constituted a mistake of law, rendering the traffic stop invalid. But here the record clearly indicates that [the officer] reasonably believed there was still a speed limit sign in place at the Highway 25 entrance to North Lake Road imposing a 20 miles per hour speed limit. [The officer] was mistaken factually that the 20 miles per hour speed limit sign was still in place." 2014 WL 642203, at *4.

Finally, addressing an argument raised by Pianalto that another officer's earlier knowledge of the downed sign should be imputed to the arresting officer, the panel held the issue was not preserved

because Pianalto failed to raise it in the district court. Nonetheless, the panel continued, the arresting officer could be charged with the other officer's knowledge only if he was acting on the other officer's directions. 2014 WL 642203, at *4-5.

Pianalto petitioned for review, which this court granted. Jurisdiction is proper. See K.S.A. 60-2101(b) (review of Court of Appeals decisions).

## ANALYSIS

The Fourth Amendment to the United States Constitution guarantees "[t]he right of the people to be secure in their persons, houses, papers, and effects, against unreasonable searches and seizures . . . ." See also Kan. Const. Bill of Rights § 15. A traffic stop is considered a seizure of the driver. *State v. Thompson,* 284 Kan. 763, 773, 166 P.3d 1015 (2007). To comply with the Fourth Amendment, the officer conducting the stop "must ' "have a reasonable and articulable suspicion, based on fact, that the person stopped has committed, is committing, or is about to commit a crime." [Citation omitted.]' " 284 Kan. at 773.

Reasonable suspicion is a lower standard than probable cause. "What is reasonable depends on the totality of circumstances in the view of a trained law enforcement officer." *State v. Martinez,* 296 Kan. 482, 487, 293 P.3d 718 (2013). In determining whether reasonable suspicion exists, the court must:

" ' "[J]udge the officer's conduct in light of common sense and ordinary human experience. [Citation omitted.] 'Our task . . . is . . .' . . . to determine whether the totality of the circumstances justify the detention. [Citation omitted.] We make our determination with deference to a trained law enforcement officer's ability to distinguish between innocent and suspicious circumstances, [citation omitted], remembering that **reasonable suspicion** represents a 'minimum level of objective justification' which is 'considerably less than proof of wrongdoing by a preponderance of the evidence.' " ' [Citations omitted.]" 296 Kan. at 487.

We must decide whether the panel erred when it affirmed the district court's denial of Pianalto's motion to suppress. Our answer turns on a single issue: whether the arresting officer's allegedly mistaken conclusion about the posted governing speed limit was objectively reasonable. If so, when combined with the officer's un-

contested observation that Pianalto was driving 28 miles per hour, the officer would have had reasonable suspicion to initiate a lawful traffic stop.

*Standard of review*

A trial court's decision on a motion to suppress is reviewed by an appellate court using a bifurcated standard. The trial court's factual findings are reviewed for substantial competent evidence. An appellate court does not reweigh the evidence, assess witness credibility, or resolve conflicting evidence. The district court's ultimate legal conclusion regarding the suppression of evidence is reviewed de novo. If the material facts underlying the trial court's decision are not in dispute, whether to suppress evidence is a question of law subject to de novo review. *Martinez*, 296 Kan. at 485.

*Discussion*

The parties have hotly disputed whether we are dealing with a mistake of fact or mistake of law. Pianalto argues the panel erred when it concluded the arresting officer made a mistake of fact, stating "[t]he failure of the officer to know that [Pianalto] could not be charged with violating a speed limit when he was not properly notified constitutes a mistake of law and renders the initial stop invalid." The City argues the arresting officer made a mistake of fact because he did not know the sign had been knocked down. This distinction previously impacted the standard governing the remaining analysis.

Prior to the United States Supreme Court's recent decision in *Heien v. North Carolina*, 574 U.S. \_\_\_, 135 S. Ct. 530, 190 L. Ed. 2d 475 (2014), a majority of federal circuits to consider the issue held that, while reasonable suspicion could be founded upon an officer's reasonable mistake of fact, it could not be based upon an officer's mistake of law—no matter how reasonable. See, *e.g.*, *United States v. Nicholson*, 721 F.3d 1236, 1242 (10th Cir. 2013); *United States v. Chanthasouxat*, 342 F.3d 1271, 1279 (11th Cir. 2003); *United States v. Miller*, 146 F.3d 274, 279 (5th Cir. 1998). And our court had adopted the majority position, holding "an officer's mistake of law alone can render a traffic stop violative of the

Fourth Amendment and § 15 of the Bill of Rights." *Martin v. Kansas Dept. of Revenue*, 285 Kan. 625, 639, 176 P.3d 938 (2008).

But in *Heien*, the United States Supreme Court rejected the majority rule and instead held that reasonable suspicion could also arise based on an officer's reasonable mistake of law. 135 S. Ct. at 536. The facts involved a police officer stopping a vehicle with only one brake light working, which led to a vehicle search and the discovery of cocaine. In the ensuing fight over suppression of the drug evidence, the state trial and appellate courts took conflicting views. In its holding, the Court majority reasoned:

" '[T]he ultimate touchstone of the Fourth Amendment is "reasonableness.' " *Riley v. California*, 573 U.S. ___, ___, 134 S. Ct. 2473, 2482, 189 L. Ed. 2d 430 (2014) (some internal quotation marks omitted). To be reasonable is not to be perfect, and so the Fourth Amendment allows·for some mistakes on the part of government officials, giving them 'fair leeway for enforcing the law in the community's protection.' *Brinegar v. United States*, 338 U.S. 160, 176, 69 S. Ct. 1302, 93 L. Ed. 1879 (1949). We have recognized that searches and seizures based on mistakes of fact can be reasonable. The warrantless search of a home, for instance, is reasonable if undertaken with the consent of a resident, and remains lawful when officers obtain the consent of someone who reasonably appears to be but is not in fact a resident. See *Illinois v. Rodriguez*, 497 U.S. 177, 183-186, 110 S. Ct. 2793, 111 L. Ed. 2d 148 (1990). By the same token, if officers with probable cause to arrest a suspect mistakenly arrest an individual matching the suspect's description, neither the seizure nor an accompanying search of the arrestee would be unlawful. See *Hill v. California*, 401 U.S. 797, 802-805, 91 S. Ct. 1106, 28 L. Ed. 2d 484 (1971). The limit is that 'the mistakes must be those of reasonable men.' *Brinegar, supra*, at 176, 69 S. Ct. 1302.

"But reasonable men make mistakes of law, too, and such mistakes are no less compatible with the concept of reasonable suspicion. Reasonable suspicion arises from the combination of an officer's understanding of the facts and his understanding of the relevant law. The officer may be reasonably mistaken on either ground. Whether the facts turn out to be not what was thought, or the law turns out to be not what was thought, the result is the same: the facts are outside the scope of the law. There is no reason, under the text of the Fourth Amendment or our precedents, why this same result should be acceptable when reached by way of a reasonable mistake of fact, but not when reached by way of a similarly reasonable mistake of law." *Heien*, 135 S. Ct. at 536.

Since *Heien* was handed down after the panel's decision in Pianalto's case we ordered supplemental briefing to address *Heien*, which the parties filed prior to oral arguments.

We will proceed by considering the following: (1) whether to characterize the officer's mistake as one of law or fact; and (2) whether that mistake was objectively reasonable. In the end, we agree with the district court and the Court of Appeals that the officer made a mistake of fact—although this is a close question. We further conclude this mistake was objectively reasonable and affirm Pianalto's convictions for DUI and speeding.

*The officer made a mistake of fact.*

After *Heien*, some might conclude it is unnecessary to characterize the officer's mistake as being one of law or fact; but the subsequent analysis as to whether the mistake was objectively reasonable can be affected by the mistake's characterization, so we consider that question as a threshold matter. The principal cases relied upon by the parties as to what type of mistake is involved are *Martin*, 285 Kan. at 637; *State v. Miller*, 49 Kan. App. 2d 491, 308 P.3d 24 (2013); and *State v. Knight*, 33 Kan. App. 2d 325, 104 P.3d 403 (2004).

*Martin* and *Knight* involved mistakes of law. In *Martin*, an officer pulled a vehicle over when one of its three stop lamps malfunctioned. The traffic ordinance at issue provided that a vehicle must have two or more stop lamps. We concluded the officer made a mistake of law by "misunderst[anding] and misappl[ying] the ordinance. Two functioning rear brake 'lamps' were sufficient under the law." 285 Kan. at 637. *Martin* resolved a conflict among Court of Appeals panels and joined Kansas with those jurisdictions in which reasonable suspicion could not be based on an officer's mistake of law. See 285 Kan. at 638-39 (approving rationale in *Chanthasouxat* and Tenth Circuit cases). In *Knight*, the officer misapplied an ordinance about the use of turn signals when stopping a driver for failing to signal while turning onto a public street from a private drive.

But in *Miller*, a Court of Appeals panel held that an officer who believed his fellow officers were blocking a roadway made a mistake of fact when he pulled over a driver for disobeying their orders, not knowing they had been briefly called away from their post. In deciding this was a mistake of fact, the panel reasoned the

officer "wasn't mistaken that it would have been illegal for [defendant] to go around those officers; he was mistaken factually that those officers were still in place." 49 Kan. App. 2d at 496.

The panel in Pianalto's case determined the facts were more similar to *Miller* and distinguishable from *Martin* and *Knight*, reasoning the officer had not misconstrued the legal effect of the downed sign but was simply unaware that it was down. *Pianalto*, 2014 WL 642203, at *4. We agree. But we acknowledge this is a close question, and admittedly the facts have a flavor of both a mistake of fact and one of law.

In *State v. McCarthy*, 133 Idaho 119, 982 P.2d 954 (Ct. App. 1999), the Idaho Court of Appeals addressed a situation similar to Pianalto's case. In *McCarthy*, an officer observed defendant pass through an intersection at approximately 45 miles per hour. The officer mistakenly believed a 25 miles per hour speed limit sign was posted before the intersection, but it was actually posted after the intersection. The parties disputed whether the mistake was one of fact or law. The court reasoned:

"We think . . . that the mistake involved here was one of both fact and law. The officer was mistaken about the *fact* of the speed limit sign's location and about the *law* regarding the speed limit applicable on [the roadway]. These two mistakes are inextricably connected, for the placement of the stop sign determined the applicable speed limit." 133 Idaho at 124.

The court concluded it was unnecessary to determine whether it would permit reasonable suspicion to arise from a reasonable mistake of law because no evidence had been presented to demonstrate the officer's mistake was a reasonable one. 133 Idaho at 125.

Having concluded this was a mistake of fact, we turn to whether that mistake was objectively reasonable. *Heien*, 135 S. Ct. at 539. In mistake of fact cases, courts consider the "reasonableness of an officer's actions using an 'objective standard' that takes the 'totality of the circumstances' and the 'information available' to the officer into account[,]" disregarding the officer's " 'actual motivations or subjective beliefs and intentions.' " *United States v. Winder*, 557 F.3d 1129, 1134 (10th Cir. 2009). "That an officer's suspicions may prove unfounded does not vitiate the lawfulness of a stop . . . ." 557 F.3d at 1134. "[M]istakes of fact are rarely fatal to an officer's

reasonable, articulable belief that an individual was violating a traffic ordinance at the time of a stop . . . ." *United States v. Delfin-Colina*, 464 F.3d 392, 398 (3d Cir. 2006).

Pianalto argues the mistake was not objectively reasonable because, for various reasons, he believes the officer knew or should have known about the sign having been knocked down: The officer would have driven past the downed sign prior to the stop; another officer had reported the downed sign to a dispatch operator prior to the stop; and that other officer was present at the traffic stop. And Pianalto further argues the other officer's knowledge should be imputed to the arresting officer. But these claims are not borne out by the record.

First, the arresting officer testified he was driving in a direction away from the downed sign when he pulled Pianalto over and did not testify that he had passed or noticed the downed sign at any point prior to the stop, and the district court did not find that he had. Second, although Pianalto testified a second police officer (who knew the sign had been knocked down) arrived at the stop after he had been pulled over, the record is clear that the officer who initiated the stop did so before the other officer arrived on the scene. There was no evidence any person who knew the sign had been knocked down shared that information with the arresting officer. Finally, Pianalto's assertion that he raised his imputed-knowledge argument in the district court is belied by the record. Nowhere in his oral arguments or brief to the district court did he make this claim. The panel correctly found this imputed-knowledge argument was never made to the district court. *Pianalto*, 2014 WL 642203, at *4-5.

In this case, the officer's reliance on the false, but normally true, fact that a speed limit sign was in place was objectively reasonable. The district court found the speed limit had been 20 miles per hour on North Lake Road for "more years than anyone knew." And the evidence established that signs displaying the 20 miles per hour limit are normally in place on both ends of the road. Nothing

in the record indicates the officer had any reason to doubt the continuing existence of the normal condition.

Affirmed.