NOT DESIGNATED FOR PUBLICATION

No. 117,821

IN THE COURT OF APPEALS OF THE STATE OF KANSAS

STATE OF KANSAS,
*Appellee*,

v.

CASEY M. BURKET,
*Appellant*.

MEMORANDUM OPINION

Appeal from Saline District Court; JARED B. JOHNSON, judge. Opinion filed September 7, 2018. Affirmed.

*Julie McKenna*, of McKenna Law Office, P.A., of Salina, for appellant.

*W. Brad Sutton*, assistant county attorney, *Ellen Mitchell*, county attorney, and *Derek Schmidt*, attorney general, for appellee.

Before GREEN, P.J., PIERRON and BUSER, JJ.

PER CURIAM: Casey M. Burket appeals his convictions for driving under the influence (DUI) and transporting liquor in an open container. He argues the district court erred in denying his motion to suppress because the officer who stopped him did not have reasonable suspicion. He also contends the district court erred in admitting a beer can and photographs of beer cans into evidence because the labels were inadmissible hearsay. We affirm.

Around 6 p.m. on May 27, 2016, Trooper Cole McGee of the Kansas Highway Patrol was eastbound on Pacific Avenue, waiting to turn left onto Third Street in Salina. He noticed a Chevy Suburban stopped in the westbound lane of Pacific. The Suburban

had the right-of-way, and McGee saw no reason for the Suburban to be stopped. The driver of the Suburban waved McGee on, and McGee turned left.

As he was turning left, McGee saw that the Suburban's front passenger did not have his seatbelt fastened. According to McGee, the passenger was leaning forward. This made it easy for him to see that the passenger's seatbelt was not across his chest. McGee could also see the straps hanging from the "B-pillar, which is where the seat belt hangs from."

McGee turned around and made a traffic stop. He identified the Suburban's driver as Burket. McGee told Burket the reason for the stop. Burket responded that his passenger, Shawn League, was not wearing the seatbelt correctly. League had the seatbelt on, but it was behind his back.

While talking to Burket, McGee noticed a "very strong" odor of alcohol coming from the Suburban. Burket had slurred speech, and some of his answers did not make sense. He also fumbled with his insurance card. McGee looked inside the Suburban and saw several beer cans, some of which were open.

After Burket submitted to the standard field sobriety tests and a preliminary breath test, McGee arrested him for DUI. Before leaving the scene of the stop, McGee took photos of the cans inside the car. He noted 16 open containers. McGee took the open containers and noticed that some still had liquid inside of them. The liquid smelled like alcohol and "had the brown tint that beer usually has." An unopened beer can also sat between the driver's seat and the front passenger seat. That can was still cold and sweating.

The State charged Burket with one count of driving under the influence under K.S.A. 2015 Supp. 8-1567, and one count of transportation of liquor in an open container under K.S.A. 2015 Supp. 8-1599.

2

Before trial, Burket moved to suppress the results of his breath test. He argued McGee did not have reasonable suspicion for the traffic stop. The district court held a hearing on Burket's motion.

At the hearing, League testified he had put his seatbelt on when he first got into the Suburban. He always wore his seatbelt when he rode with Burket, because Burket would not start the car until League had fastened his seatbelt. The seatbelt was properly fastened when McGee stopped them. League explained that the seatbelt comes out of the seat's right shoulder, so it would not have been dangling even if he had not fastened it.

League said that Burket stopped at the intersection for safety. There was a bus stopped in front of them, and McGee was in the other lane. Because of this, Burket did not have enough room to continue through the intersection.

Burket testified he never starts his car until his passengers have fastened their seatbelt. He explained the passenger seatbelt came out of the seat itself and had a retractable spring so it went into the seat when not worn. Burket stated League puts the seatbelt under his right arm.

Burket said he stopped at the intersection because he did not believe it was safe to continue driving. A bus had stopped on the side of the road, and McGee was in the other lane. He did not think his Suburban could fit between the bus and McGee's patrol car, so he let McGee turn left first. He was not in the intersection when he stopped. McGee never told Burket he had committed a traffic violation by stopping and letting McGee turn first. McGee did talk to League about the seatbelt.

McGee testified that there were no adverse weather conditions that day. He did not remember a bus being in that area. He also did not remember if the road was wide enough that a Suburban could pass between two other vehicles.

3

The video from McGee's patrol car showed it was still light outside at the time of the stop. The video from McGee's windshield showed a bus heading the opposite direction of McGee's patrol car. The bus had its hazard lights on as it passed McGee. The bus did not reappear in the video from McGee's rear window. Burket's Suburban then stopped before the intersection for a few seconds, and Burket motioned for McGee to make his turn.

The district court held that McGee had reasonable suspicion to stop Burket's car on two bases. First, McGee had reasonable suspicion to stop Burket because League had not properly fastened his seatbelt. The court noted that McGee could see that League was not wearing his seatbelt properly during the turn. The court held that because the seatbelt went behind League's shoulder, McGee could have reasonably believed that the seatbelt was dangling from the B-pillar.

Second, the district court found that McGee had reasonable suspicion that Burket was violating the law by stopping in the street. The court noted that Burket was not breaking the law, because he had to stop to avoid hitting the bus or McGee. But the court held, "I do find that that was a reasonable mistake of fact and law, namely law, by [McGee], and that would not negate his reasonable suspicion to conduct the stop."

McGee and League both testified at the jury trial. During McGee's testimony, the State entered a can and photos of the cans in Burket's car into evidence. Burket objected, arguing the labels on the cans were hearsay and not relevant because the State had not established whether there was beer inside it. The district court denied Burket's relevancy objection, finding it went to weight and not admissibility.

The court also denied the hearsay objection:

4

"As to the hearsay I've reviewed . . . [*State v. Gubbels*, No. 96,431, 2007 WL 2580501 (Kan. App. 2007) (unpublished opinion)]. It's an unpublished opinion. Interestingly enough it does indicate that the label on a beer bottle is hearsay and that it would need to fit within the hearsay exception under Kansas statutes. We can dispense with the confrontation clause issue that was referenced by [defense counsel] because this is not testimonial evidence. It is not litigation or any type of criminal charges. Simply imprinted by label, imprinted writing on a metal can that's silver and the color of the writing is red and white with some graphics and other normal indicia of alcohol and beer. Quite frankly I just disagree with [*Gubbels*]. It's unpublished.

. . . .

"And I find the result to not be on point with the issue of hearsay. Specifically the idea of hearsay is for the legislature to craft provisions that would protect the integrity of evidence essentially by ensuring reliability and having certain situations where that could be ensured in admitting it based on those type[s] of very narrowly tailored exceptions. This is an actual physical item. It is not being offered to prove the truth of the matter asserted just based on writing. The jury has the can that appears to be a similar shape and size of a beer can, it's silver, it has a tab opening, the tab is removed, the writing on it is normal reliable indicia of a beer manufacturer and everyone in this room can agree that alone is insufficient for a conviction of possession of alcohol or transporting alcohol in an open container. . . ."

Defense counsel later presented League with the can admitted as State's Exhibit #1. League identified it as a beer can. He also testified there were beer and pop cans in the back of Burket's car. League explained that Burket collected cans and tabs for recycling.

The jury convicted Burket of DUI and transporting an alcoholic beverage in an open container. The district court sentenced him to 6 months in jail, but suspended that sentence and placed Burket on 12 months' probation. Burket appeals.

On appeal, Burket argues the district court erred in denying his motion to suppress. He contends that neither he nor League were violating any law when McGee drove past. For this reason, McGee could not have had reasonable suspicion.

5

We use a bifurcated standard when reviewing a district court's decision on a motion to suppress. We review the district court's fact-findings to determine whether substantial competent evidence supports them. In reviewing these fact-findings, we do not reweigh the evidence or assess the credibility of witnesses. We review the district court's ultimate legal conclusion using a de novo standard. *State v. Patterson*, 304 Kan. 272, 274, 371 P.3d 893 (2016).

When reviewing traffic stops, we must determine if the officer had reasonable suspicion for the stop.

> "The Fourth Amendment to the United States Constitution guarantees '[t]he right of the people to be secure in their persons, houses, papers, and effects, against unreasonable searches and seizures . . . .' See also Kan. Const. Bill of Rights § 15. A traffic stop is considered a seizure of the driver. *State v. Thompson*, 284 Kan. 763, 773, 166 P.3d 1015 (2007). To comply with the Fourth Amendment, the officer conducting the stop 'must "'have a reasonable and articulable suspicion, based on fact, that the person stopped has committed, is committing, or is about to commit a crime.' [Citation omitted.]"' 284 Kan. at 773.
>
> "Reasonable suspicion is a lower standard than probable cause. 'What is reasonable depends on the totality of circumstances in the view of a trained law enforcement officer.' *State v. Martinez*, 296 Kan. 482, 487, 293 P.3d 718 (2013). In determining whether reasonable suspicion exists, the court must:
>
> "'[J]udge the officer's conduct in light of common sense and ordinary human experience. [Citation omitted.] "Our task . . . is . . ." . . . to determine whether the totality of the circumstances justify the detention. [Citation omitted.] We make our determination with deference to a trained law enforcement officer's ability to distinguish between innocent and suspicious circumstances, [citation omitted], remembering that reasonable suspicion represents a "minimum level of objective justification" which is "considerably less than proof of wrongdoing by a preponderance of the evidence." [Citations omitted.]' 296 Kan. at 487." *City of Atwood v. Pianalto*, 301 Kan. 1008, 1011, 350 P.3d 1048 (2015).

6

A passenger's failure to wear a properly fastened seatbelt when the car is in motion violates Kansas law. K.S.A. 2017 Supp. 8-2503(a)(1). Stopping a car on a two-way roadway when the car's right-hand wheels are more the 12 inches from the right-hand curb also violates Kansas law. K.S.A. 8-1572; see also K.S.A. 8-1472 ("'Stop' or 'stopping' when prohibited means any halting, even momentarily, of a vehicle, whether occupied or not, except when necessary to avoid conflict with other traffic or in compliance with the directions of a police officer or traffic-control sign or signal."). An officer's observation of a traffic violation may provide reasonable suspicion for a traffic stop. *State v. Moore*, 283 Kan. 344, 350, 154 P.3d 1 (2007).

At the district court level, Burket argued that League had properly fastened his seatbelt, so McGee could not have reasonable suspicion on that basis. On appeal, Burket does not contest that League was not wearing his seatbelt properly. Instead, he argues that the car was not in motion when McGee saw League's seatbelt was not properly fastened. He contends League was not violating the statute, because the car was not in motion.

Burket raises this argument for the first time on appeal without explaining why we should address it. He has thus waived and abandoned this argument. See *State v. Godfrey*, 301 Kan. 1041, 1044, 350 P.3d 1068 (2015). That said, neither party disputes that Burket's car was not in motion when McGee drove past. Because this fact is undisputed, the determination of whether McGee had reasonable suspicion is only a question of law which we may address for the first time on appeal. See *State v. Thurber*, 308 Kan. 140, 153, 420 P.3d 389 (2018); *State v. Phillips*, 299 Kan. 479, 493, 325 P.3d 1095 (2014).

Burket is perhaps correct that League was not violating the law at the exact moment McGee saw him. But the standard of reasonable suspicion requires only that a trained officer would reasonably suspect, based on articulable facts, that a person *has committed*, is committing, or *is about to commit* a crime. See *Pianalto*, 301 Kan. at 1011. Because Burket stopped only momentarily, McGee could reasonably suspect that League did not unfasten and refasten his seatbelt during that brief time. This is particularly so

7

because McGee did not report seeing League unfasten his seatbelt after the car stopped. McGee thus had reasonable suspicion that League had committed or was about to commit a violation of K.S.A. 2017 Supp. 8-2503(a). See *State v. Martynowicz*, No. 109,056, 2013 WL 5303557, at *4 (Kan. App. 2013) (unpublished opinion) (finding officer had reasonable suspicion for traffic stop after seeing driver and passenger without seatbelts on while stopped at an intersection).

The district court found that McGee had reasonable suspicion to stop Burket because Burket was stopped in the road. The court noted that Burket had not committed a traffic violation because he needed to stop to avoid the bus. But the court found that McGee made a reasonable mistake of law when he determined that Burket stopped illegally.

As a point of clarification, Burket argued at the district court level, and again argues on appeal, that he did not violate K.S.A. 8-1571. That statute prohibits stopping or parking a car in some locations "[e]xcept when necessary to avoid conflict with other traffic." But McGee did not cite Burket for violating K.S.A. 8-1571. Instead, he cited Burket for violating K.S.A. 8-1572. That statute requires that any car stopped or parked on a two-way roadway be within 12 inches of the right-hand curb. K.S.A. 8-1572.

K.S.A. 8-1572 does not expressly provide an exception for stopping to avoid traffic. That said, the Uniform Act Regulating Traffic defines stopping as "any halting, even momentarily, of a vehicle, whether occupied or not, except when necessary to avoid conflict with other traffic or in compliance with the directions of a police officer or traffic-control sign or signal." K.S.A. 8-1472. Burket lawfully stopped his car to avoid the bus in front of him.

Burket reasons that because he stopped legally, McGee could not have had reasonable suspicion he had stopped illegally. But the district court found that although Burket was legally stopped, this did not negate McGee's reasonable suspicion because

8

McGee had made a reasonable mistake of law. Burket does not address this point in his brief, so he has waived and abandoned any argument that the district court erred in finding so. See *State v. Williams*, 303 Kan. 750, 758, 368 P.3d 1065 (2016).

Still, the district court was correct that reasonable suspicion can arise based on an officer's reasonable mistake of fact or law. See *Pianalto*, 301 Kan. at 1013. Because either a reasonable mistake of fact or law may support reasonable suspicion, it may seem unnecessary to characterize the officer's mistake as one or the other. But a mistake's characterization can affect the analysis on whether that mistake was objectively reasonable. 301 Kan. at 1014. The correct characterization of McGee's mistake is thus a threshold determination.

Here, the district court determined McGee made a mistake of law rather than fact. While the facts here do "have a flavor of both a mistake of fact and one of law," McGee's mistake may best be categorized as one of fact. See *Pianalto*, 301 Kan. at 1015. McGee was not mistaken that Burket could legally stop if necessary to avoid hitting the bus; he was mistaken when he testified that the bus was not there. See 301 Kan. at 1014-15; *State v. Miller*, 49 Kan. App. 2d 491, 496, 308 P.3d 24 (2013) (holding officer made mistake of fact because he "wasn't mistaken that it would have been illegal for [the defendant] to go around those officers [blocking traffic from entering an interstate]; he was mistaken factually that those officers were still in place").

While the district court may have incorrectly characterized McGee's mistake as one of law, we may still uphold the district court's decision if right for the wrong reasons. See *Phillips*, 299 Kan. at 493. We must therefore determine if McGee's mistake of fact was objectively reasonable. Here, facts support both sides of the argument. On the one hand, the bus drove past McGee with its hazard lights on seconds before McGee saw Burket stopped in the road. On the other hand, the bus stopped behind McGee, and McGee testified he did not know about the bus. This is a close call, but McGee's mistake was a reasonable one. McGee said he did not know about the bus, and the stopped bus

was not in his direct line of sight. If, however, McGee had testified he knew about the bus stop or Burket had stopped closer to the bus, the outcome might be different.

Next, Burket argues the district court erred in admitting a beer can and photographs of beer cans into evidence because the labels on the cans were hearsay. The standard of review for the admission or exclusion of evidence depends on the level of discretion that the district court exercises in deciding whether to admit the evidence. *State v. Bowen*, 299 Kan. 339, 348, 323 P.3d 853 (2014). If the issue on appeal is a challenge to the district court's legal basis for the admission or exclusion of evidence, the appellate standard of review is de novo. 299 Kan. at 348-49. Burket is claiming the district court had no legal basis to admit the hearsay statements on the labels, so our standard of review is de novo.

Hearsay evidence is "[e]vidence of a statement which is made other than by a witness while testifying at the hearing, offered to prove the truth of the matter stated." K.S.A. 2017 Supp. 60-460. Hearsay evidence is generally inadmissible unless it falls within a recognized exception. K.S.A. 2017 Supp. 60-460. For hearsay, a statement may be oral, written, or nonverbal conduct intended as a substitute for words in expressing the matter stated. K.S.A. 60-459(a).

Burket cites *State v. Gubbels*, 2007 WL 2580501, to support his argument. The district court convicted Gubbels of transporting an open container at a bench trial. On appeal, Gubbels argued the court erred in admitting into evidence the police officer's testimony about the labels on the open containers. The *Gubbels* court held that the label on a container of alcohol is hearsay if admitted to prove the contents of the container. 2007 WL 2580501, at *2.

Ultimately, the *Gubbels* court found that alcohol labels do not fall within a hearsay exception. 2007 WL 2580501, at *3. The court explained,

10

"We believe that it would be stretching the hearsay exception in Kansas to say that the labels on alcohol bottles are 'a list, register, periodical or other published compilation' and are exceptions to the hearsay law. Therefore, we do not believe that the exception applies to the bottle labels even though alcoholic beverages are also subject to Kansas and federal laws." 2007 WL 2580501, at *3.

Here, the district court disagreed with *Gubbels*, and found that the label on a can is not hearsay. Because *Gubbels* is an unpublished opinion, it is not binding precedent. The district court did not necessarily err in declining to follow it. See Supreme Court Rule 7.04(g)(2)(A) (2018 Kan. S. Ct. R. 45).

Even so, it is impossible to determine definitively if the district court did err in admitting the can and photos of the cans. The record here does not include the challenged exhibits, nor did Burket request their addition. And no one testified as to what the statements on the label were. Burket was responsible for providing a record showing prejudicial error. *State v. Sisson*, 302 Kan. 123, 128, 351 P.3d 1235 (2015). Without the exhibits or some proffer of their content, we must presume the district court did not err. 302 Kan. at 128; see *State v. Bishop*, 264 Kan. 717, 726, 957 P.2d 369 (1998) (finding defendant could not prove district court committed reversible error in admitting document that was not an original because defendant had not included document in record); *State v. Wood*, 196 Kan. 599, 606, 413 P.2d 90 (1966) (declining to address argument that testimony was hearsay when testimony was not in record).

Even if the district court had erred in admitting the exhibits, any error was harmless. Burket argues that the exhibits were necessary to show that the cans contained beer and not cereal malt beverage. He contends that transporting an open container of cereal malt beverage does not violate K.S.A. 2017 Supp. 8-1599. But Burket is wrong on this point.

K.S.A. 2017 Supp. 8-1599(b) prohibits transporting any alcoholic beverage in any vehicle on a highway or street. This statute defines alcoholic beverage as "any alcoholic

11

liquor, as defined by K.S.A. 41-102 . . . or any cereal malt beverage, as defined by K.S.A. 41-2701." K.S.A. 2017 Supp. 8-1599(b). The plain language of the statute shows the jury could have convicted Burket for transporting an open container of alcoholic liquor, including beer, or cereal malt beverage. See K.S.A. 2017 Supp. 41-102(b), (c), (e); K.S.A. 2017 Supp. 41-2701(a).

The State presented sufficient evidence, other than the labels, that the cans had alcohol in them. McGee testified the cans still had liquid in them when he stopped Burket. He stated the liquid smelled like alcohol and had the same brown tint as beer. League also testified that the can admitted into evidence was a beer can and that Burket had beer cans in his car. As a result, any error in admitting the challenged exhibits was harmless. See *Gubbels*, 2007 WL 2580501, at *3-4 (finding any error in admitting bottle labels was harmless because officer's and defendant's testimonies were sufficient to prove the bottles had alcohol in them).

Affirmed.