NOT DESIGNATED FOR PUBLICATION

No. 120,343

IN THE COURT OF APPEALS OF THE STATE OF KANSAS

DOUGLAS WEIPPERT,
*Appellee*,

v.

KANSAS DEPARTMENT OF REVENUE,
*Appellant*.

MEMORANDUM OPINION

Appeal from Finney District Court; MICHAEL L. QUINT, judge. Opinion filed November 15, 2019. Reversed with directions.

*John D. Shultz*, of Legal Services, Kansas Department of Revenue, for appellant.

*John M. Lindner*, of Lindner, Marquez, & Koksal, of Garden City, for appellee.

Before POWELL, P.J., HILL and WARNER, JJ.

PER CURIAM: This is an appeal by the Kansas Department of Revenue of the district court's reversal of the suspension of Weippert's driving license. Our review of the record yields two reasons for reversing the district court. First, the court did not consider all relevant evidence and ignored uncontroverted evidence when it formed its conclusions. Also, fact-finding in a driving license administrative hearing must, by law, be independent of any criminal charges arising out of the same occurrence. The district court relied on the facts in Weippert's DUI prosecution and even attached a copy of the

1

DUI court's extensive findings to its own opinion for support. We hold the court violated the statute. We reverse and order the Department to reinstate its suspension.

*We summarize the background facts.*

The following information is gleaned from the transcript of the district court's hearing on Weippert's appeal of the administrative suspension of his driving license. Garden City police officer Joshua Meinzer stopped Weippert late one evening in February 2017. He noticed Weippert's car was swerving within his lane between the white center line and the curb. He then saw Weippert commit a traffic violation by failing to signal his intent to turn as required—within 100 feet of an intersection. Meinzer saw Weippert stop at the intersection, then activate his turn signal, and make the turn. He watched Weippert's turn and described it as "wide" because the driver's side tires crossed the double yellow line into the turn lane for the opposing lane of traffic.

Following right behind, Meinzer activated his car's flashing lights but Weippert did not pull over. After about a block, Meinzer then turned on his car's siren. Weippert still did not pull over. It was not until Weippert drove about one more block and then turned into his driveway, that he stopped his car. Meinzer testified that—based on his training and experience—Weippert's driving infractions and failure to stop his vehicle after Meinzer activated his lights and siren were indicators that Weippert was impaired.

The officer approached Weippert at his car in the driveway and asked him about his alcohol consumption. Weippert admitted that he drank two beers. Meinzer noticed the odor of alcohol emanating from Weippert's person. He also saw that Weippert's eyes were watery and bloodshot. Meinzer considered these to be additional indicators of alcohol impairment, so he continued with his investigation.

The weather was cold and windy. Weippert told Meinzer that he was recovering from bacterial pneumonia, he had just been released from the hospital, and had started back to work. He said his muscles were weak. Weippert also said that he had gotten out of the hospital, went to a bar, and had beers. He also told Meinzer that he had been injured in an accident, which led to the surgical fusion of his right ankle.

When Meinzer asked Weippert if he wanted to go to the police station to perform some field sobriety tests in a controlled environment, he declined. So Meinzer had Weippert perform the tests in the driveway. Weippert performed the walk-and-turn test on his sidewalk, which he described as "not flat." He showed five or six clues of impairment on this test, including an improper turn, taking the wrong number of steps, using his arms for balance, stepping off the line, and missing the heel-to-toe. On the one-legged stand, Weippert raised his right foot, and Meinzer observed no clues of impairment. Meinzer saw Weippert stagger and sway from side to side even when he was not doing the tests.

Another officer arrived on the scene and spotted an open can of alcohol when he approached the passenger side of Weippert's car. The can was recovered during a later search.

After all of that, Meinzer asked Weippert to submit to a preliminary breath test. Weippert consented and the test showed a blood alcohol content of greater than 0.08 percent. Meinzer then arrested Weippert for driving under the influence of alcohol. Weippert's evidentiary breath test result at the police station was 0.125 percent.

*The Department of Revenue acts to revoke Weippert's driving license.*

Meinzer completed a DC-27 form—Officer's Certification and Notice of Suspension—on which he suggested reasonable grounds existed to believe Weippert had

been operating a vehicle while under the influence of alcohol or drugs. He wrote that his reason for initial contact with Weippert was a traffic violation—specifically, Weippert's failure to give notice of his intent to turn. Meinzer noted Weippert was placed under arrest, and he also specified that Weippert had a test result that showed he had an alcohol concentration of 0.08 or greater.

Meinzer gave several grounds on the DC-27 form to support his belief that Weippert was under the influence of alcohol or drugs:
- The odor of alcoholic beverages;
- alcoholic beverage container in the vehicle;
- he failed field sobriety tests;
- he had slurred speech and bloodshot eyes;
- he had poor balance or coordination;
- he admitted that he consumed alcohol; and
- he failed a preliminary breath test.

Meinzer certified that the testing procedures complied with the requirements set out by the Kansas Department of Health and Environment.

*Weippert asks for and receives an administrative hearing on the suspension.*

Weippert requested an administrative hearing. The administrative hearing officer affirmed the suspension. The hearing officer noted:
- Weippert's failure to use his turn signal within 100 feet of an intersection;
- he was coming from a bar that evening;
- he had watery, bloodshot eyes;
- there was a strong odor of alcohol;
- Weippert admitted to drinking two beers;

4

- he continued to drive for about two blocks after Meinzer activated his lights and siren;
- he staggered and swayed from side to side, even while not performing field sobriety tests;
- he failed the walk-and-turn test; and
- he failed the preliminary breath test.

Because of Weippert's claims about his angled sidewalk, his recent poor health, and his right-side injuries from a car accident, the administrative officer only considered three clues on the walk-and-turn test that could not be due to an ankle injury: improper turn, wrong number of steps, and using his arms for balance. The hearing officer also considered Weippert's claim that his eyes were red and burning because he was "in the sand hills that day." The hearing officer found that Weippert "appeared to be intoxicated on video." The hearing officer then found that the walk-and-turn test was valid and affirmed the suspension of Weippert's driving privileges.

The Department suspended Weippert's license for one year and Weippert sought judicial review of the license suspension.

*We turn now to the district court proceedings.*

At the district court trial, both Weippert—who had the burden—and Meinzer testified. Weippert testified he was a self-employed truck driver. He claimed that on the day of his arrest, he had been at work when he ran out of gas. After he got gas, he stopped at a bar and grill near his home to eat—about six blocks—because there were few places open at the late hour.

Weippert testified that once on his way home, he used his turn signal at a reasonable distance and complied with the 100-foot rule. He denied having trouble

maneuvering his vehicle. He claimed that his full-sized pickup made turning the corner "kind of tight," but his turn was "within reason." Weippert acknowledged he did not pull over when he saw the emergency lights behind him. He thought it was reasonable to drive to his house because his dog was with him and "I figured if there [was] any problem that the officer needed me out of the pickup or anything, it would be better if my dog was let out in the backyard." Weippert testified that at the time, he did not know why Meinzer was pulling him over.

He also said that the weather was extremely cold and windy. Weippert volunteered to Meinzer that he had physical issues that could affect his ability to perform the field sobriety tests. He explained to Meinzer that he had been "fighting" bacterial pneumonia for several weeks and his muscles were weak. He also told Meinzer that he was in a severe wreck with multiple injuries and his ankle was surgically fused. Weippert said Meinzer had him perform the walk-and-turn test in his driveway, which he described as sloping down towards the street. He claimed that between his ankle, the slope of the driveway, and the wind, there was "no way I could perform that toe-to-toe and keep my balance."

Weippert testified that after the walk-and-turn test, he asked Meinzer if they could move inside the garage. He testified he was "very weak and shivering from the cold and fighting the pneumonia" and wanted to get the tests over with. Weippert performed the one-legged stand inside his garage, standing on his left leg, and scored zero clues of impairment. Weippert testified that he then agreed to take a preliminary breath test, after which he was arrested.

A video taken at the scene in Weippert's driveway was shown for the court. The transcript of the trial does not describe what the video revealed. Weippert did testify about certain aspects of the video. He wanted to explain why he declined the offer to perform field sobriety tests at the law enforcement center; he wanted to suggest that

noises on the video were the wind; he wanted to explain that his visible tilting was due to the downhill slope and his bad ankle. Weippert did not offer the video into evidence. The video is not included in the record on appeal.

Meinzer's testimony about the traffic stop and Weippert's arrest matched the findings made by the administrative hearing officer cited above. Meinzer also testified that the surface on which Weippert performed the walk-and-turn test, was flat enough to reasonably perform the test. He did not believe that the slope of the surface caused Weippert to step off the line or miss the heel-toe aspect of the test. Meinzer likewise did not believe the wind affected Weippert's performance on the test and noted that their vehicles acted as a wind break. Meinzer confirmed the details of the boxes he checked on the DC-27 to show his grounds for believing Weippert was operating his vehicle while impaired.

*The district court lifts the suspension order.*

The district court reversed the suspension of Weippert's license. The court began by referring to the order granting Weippert's motion to suppress in the DUI case with the reference:  "More or less identical facts were raised in that case . . . " and then attached a copy of that order. We take that language to be an incorporation by reference of the findings of that order into the district court's driving license reinstatement order.

Moving on, the court's decision included a detailed description of the streets and intersection in this case. The judge based these facts on his personal knowledge stemming from his prior service on the city commission. The district judge added this information to "determine[] the validity of the observations by [the Department's] main witness [Meinzer]."

7

Going further, the court found that Weippert did not signal his intent to turn 100 feet before making his turn. Then, the court found that Meinzer followed Weippert around the corner, activated his patrol car's overhead lights, and then followed Weippert to his house. The balance of the court's findings were based on the video which is not in the record on appeal.

From these findings, the court concluded that there were no observable signs of intoxication, and Meinzer "incorrectly" placed Weippert under arrest without "appropriate or proper probable cause." The court "suppressed" the arrest and subsequent breath test procedures. It concluded that Weippert had not committed any law violations so Meinzer did not have reasonable articulable suspicion to stop Weippert. The court ordered the reinstatement of Weippert's license.

On appeal, the Department argues that the case should be reversed and remanded to the district court with directions to find that Meinzer had reasonable grounds to believe Weippert was operating his vehicle under the influence of alcohol. Essentially, the Department claims that the district court did not consider all of the relevant evidence and was persuaded by and relied upon the DUI court's decision in violation of K.S.A. 2018 Supp. 8-1020(t). Our review of the record forces us to agree.

But first, we must point out that we are not persuaded by Weippert's claim that the Department has abandoned several issues. We hold to the contrary.

A police officer's initial contact with a driver and that officer's reasonable suspicion to request a PBT and seek field sobriety tests are encompassed by the DC-27 form. These are all aspects of whether there are reasonable grounds to believe that a person was operating a vehicle under the influence. A district court's conclusions—as they relate to a review of the agency's decision to suspend Weippert's driving

8

privileges—are part and parcel of the primary conclusion appealed by the Department here. Thus, we see no abandonment of those issues here.

*There are several rules that guide us.*

The Kansas Judicial Review Act, K.S.A. 77-601 et seq., applies to judicial review of state agency decisions. K.S.A. 2018 Supp. 77-603(a). A rebuttable presumption of validity attaches to all actions of an administrative agency. See *Sierra Club v. Moser*, 298 Kan. 22, 47, 310 P.3d 360 (2013). Appeals of agency decisions involving appeals from administrative suspensions of driving licenses to the district court are de novo. K.S.A. 2018 Supp. 8-259(a). On appeal from the district court, the party asserting the invalidity of the agency action—in this case, Weippert—has the burden of proof. K.S.A. 2018 Supp. 77-621(a)(1).

At the time of Weippert's stop, any person who operated or attempted to operate a vehicle within this state was considered to have given consent to one or more tests of his or her blood, breath, urine, or other bodily substances to determine the presence of alcohol or drugs. K.S.A. 2016 Supp. 8-1001(a). Law enforcement officers could only conduct these tests if, at the time of the request, the officer had "reasonable grounds to believe the person was operating or attempting to operate a vehicle while under the influence of alcohol or drugs, or both . . . and . . . [t]he person has been arrested or otherwise taken into custody for any violation of any state statute, county resolution or city ordinance." K.S.A. 2016 Supp. 8-1001(b)(1)(A). These decisions by law enforcement officers to test drivers are subject to administrative and judicial review. The question thus becomes, what are "reasonable grounds"?

That question, whether reasonable grounds existed, is a mixed question of law and fact. *Poteet v. Kansas Dept. of Revenue*, 43 Kan. App. 2d 412, 415, 233 P.3d 286 (2010). We evaluate "reasonable grounds" under probable cause standards. *Swank v. Kansas*

9

*Dept. of Revenue*, 294 Kan. 871, Syl. ¶ 3, 281 P.3d 135 (2012). We look at all of the circumstances, meaning "'there is no rigid application of factors and courts should not merely count the facts or factors that support one side of the determination or the other.'" *Sloop v. Kansas Dept. of Revenue*, 296 Kan. 13, 20, 290 P.3d 555 (2012). And finally, these circumstances are viewed through the lens of an objectively reasonable police officer. *State v. Keenan*, 304 Kan. 986, 994, 377 P.3d 439 (2016).

Along this same line of reasoning, Kansas courts have held that an officer's statements in a properly certified DC-27 form are admissible without requiring the certifying officer to testify at the hearing. See *Pfeifer v. Kansas Dept. of Revenue*, 52 Kan. App. 2d 591, 601, 370 P.3d 1200 (2016).

A district court's factual findings are reviewed to determine whether they are supported by substantial competent evidence, but the ultimate legal conclusions represent questions of law subject to unlimited review. *Shrader v. Kansas Dept. of Revenue*, 45 Kan. App. 2d 216, 219, 247 P.3d 681 (2011), *aff'd* 296 Kan. 3, 290 P.3d 549 (2012). Substantial competent evidence means "such legal and relevant evidence as a reasonable person might accept as being sufficient to support a conclusion." *Drach v. Bruce*, 281 Kan. 1058, Syl. ¶ 2, 136 P.3d 390 (2006). Although appellate courts defer to the district court's factual findings if substantial evidence supports them, an appellate court must independently review, de novo, the ultimate legal conclusion regarding whether an officer had reasonable grounds. *Poteet*, 43 Kan. App. 2d 412, Syl. ¶ 1.

To support its claim that Meinzer had reasonable grounds to request an evidentiary breath test, the Department relies on *Smith v. Kansas Dept. of Revenue*, 291 Kan. 510, 242 P.3d 1179 (2010). In that case, the Department suspended Smith's driving license for failing an evidentiary breath test. The district court upheld the suspension. On appeal to our Supreme Court, Smith argued, among other things, that the arresting officer lacked reasonable grounds to believe that he was DUI. In rejecting Smith's argument, our

Supreme Court found that the following facts amounted to reasonable grounds for an officer to believe that Smith was DUI:

> "(1) [S]melling alcohol upon his initial contact with Smith; (2) observing Smith had bloodshot and watery eyes; (3) Smith's admission to having a few drinks that evening; (4) Smith's admission that his last drink was approximately 30 minutes before his contact with the trooper; (5) the smell of alcohol wafting from Smith's truck; (6) viewing an open container in Smith's truck; (7) Smith's difficulty with a prefield sobriety test; (8) Smith presenting two clues on the walk-and-turn field sobriety test; and (9) Smith presenting one clue on the one-leg stand field sobriety test." 291 Kan. at 518-19.

We note similarities with this case.
- Meinzer smelled alcohol upon contact with Weippert;
- Weippert admitted to consuming alcohol;
- Weippert had bloodshot and watery eyes;
- a fellow officer observed an open container of alcohol in Weippert's vehicle; and
- Weippert presented several clues on the walk-and-turn test.

In setting aside Weippert's driving license suspension, the district court made some findings of fact that are unsupported by substantial evidence. First, the district court found that Weippert stopped at a red light and proceeded with his turn when the light turned green. The district court also concluded that Weippert did not commit any law violations. In fact, there is nothing in the evidence that specifies the colors of the traffic lights at any time.

Further, Meinzer testified that he observed Weippert's vehicle fail to signal his intent to turn as required—a traffic infraction. Weippert captured Meinzer's attention by swerving within his lane prior to his turn. As he continued to follow Weippert, Meinzer observed Weippert make a wide turn and fail to stop after Meinzer activated his lights

11

and, a block later, his siren. These are also traffic infractions. The court ignored this evidence.

In addition, in setting aside Weippert's license suspension, the district court ignored substantial uncontroverted evidence supporting reasonable grounds for Meinzer to believe that Weippert was DUI, including the odor of alcohol, Weippert's admission to consuming alcohol, the open alcohol container in Weippert's vehicle, and Weippert's bloodshot and watery eyes. The district court did not mention any of this evidence in its order. "[A] factfinder cannot disregard undisputed evidence that is not improbable, unreasonable, or untrustworthy. Such evidence must be regarded as conclusive." *Casco v. Armour Swift-Eckrich*, 283 Kan. 508, 515, 154 P.3d 494 (2007).

Our task is clear. Although an appellate court defers to the district court's factual findings if substantial evidence supports them, an appellate court must independently review the ultimate legal conclusion regarding whether an officer had reasonable grounds to request breath testing. *Poteet*, 43 Kan. App. 2d 412, Syl. ¶ 1.

Even when we disregard the walk-and-turn test because of Weippert's possible ankle problem—Meinzer had reasonable grounds to believe that Weippert was DUI. Those grounds are sufficient to justify his request for breath testing. In short, the district court viewed the undisputed evidence presented at the bench trial much too narrowly, in contravention of its duty to evaluate all of the circumstances. See *Swank*, 294 Kan. at 881.

We must emphasize that Weippert was required to prove Meinzer *did not* have reasonable grounds to believe that he was driving under the influence and he had to do so with the evidence presented to the district court during this trial. See *Forrest v. Kansas Dept. of Revenue*, 56 Kan. App. 2d 121, 425 P.3d 624 (2018), *rev. denied* 309 Kan. 1347 (2019). Weippert did not offer any evidence to corroborate or support his testimony

regarding the mitigating circumstances of his hospitalization for pneumonia or his ankle fusion. Weippert's testimony alone is insufficient to overcome the conclusive evidence in the DC-27.

When we consider all of the circumstances:

- Weippert's failure to signal his intent to turn as required;
- Weippert was driving home from a bar;
- Weippert had watery and bloodshot eyes;
- the odor of alcohol emanating from Weippert's person;
- Weippert admitted he had consumed alcohol; and
- the open container of alcohol in Weippert's truck

we find there were reasonable grounds for Meinzer to believe that Weippert operated a vehicle under the influence of alcohol. See *Smith*, 291 Kan. at 518-19.

*The Department complains about the use of the DUI court order.*

The Department also contends that the district court erred when it relied on the DUI court's decision. The Department argues that this was contrary to K.S.A. 2018 Supp. 8-1020(t). In response, Weippert contends that the district court did not violate the statute and instead claims that the court "clearly did not give much credibility to the officer and gave a great deal to [Weippert]." It appears that the judge relied upon the DUI court's findings to make its credibility determination.

The statute is very clear that the driving license hearing is totally separate from any other prosecution by the State. Under K.S.A. 2018 Supp. 8-1020(t):

"The facts found by the hearing officer or by the district court upon a petition for review shall be independent of the determination of the same or similar facts in the

13

adjudication of any criminal charges arising out of the same occurrence. The disposition of those criminal charges shall not affect the suspension or suspension and restriction to be imposed under this section."

Neither party argues here that the language of subparagraph (t) is ambiguous. Accordingly, based on the plain language of the statute, this court must determine if the district court's reinstatement of Weippert's license was independent of the DUI court's determination. A review of the two decisions reveals that the district court's decision was not independent and it did rely on the DUI court's findings and conclusions.

Here, the district court began its decision by writing: "The traffic matter from which this suspension results is found in case 17 TR 490 . . . . *More or less identical facts were raised in that case are reflected in the trial of this matter*." (Emphasis added.) The district court attached to its journal entry the DUI court's order.

While it is legally appropriate to require the State to carry the burden in a DUI proceeding, here, it was Weippert who had the burden to prove the agency erred in suspending his driving privileges. See K.S.A. 2018 Supp. 77-621(a)(1).

Here, the district court's journal entry reflects that the court added information sua sponte about the intersection to determine "the validity of the observations" of Meinzer. The district court noted: "We do not have evidence on tape of the actual approach by the officer," thus implicitly requiring the Department to offer evidence to corroborate the DC-27 and Meinzer's testimony. The district court used similar language as the DUI court when discussing the field sobriety test protocols, even though there was no such discussion, testimony, or other evidence in this trial.

Significantly, the district court found the "arrest of [Weippert] was therefore illegal and the officer was without authority to request a chemical test." The district court

14

found that Weippert's "arrest and subsequent test procedures should be and are suppressed." The exclusionary rule is not available in an administrative proceeding. See *Martin v. Kansas Dept. of Revenue*, 285 Kan. 625, 646, 176 P.3d 938 (2008), *overruled on other grounds by City of Atwood v. Pianalto*, 301 Kan. 1008, 350 P.3d 1048 (2015).

The district court weighed the findings and conclusions of the DUI court regarding the State's burden in the DUI proceeding. Here, the district court adopted a similar tone as the DUI court when the district court made findings and conclusions relevant to a DUI proceeding and outside the scope of an administrative proceeding, and when it failed to consider all of the circumstances that were relevant. Contrary to K.S.A. 2018 Supp. 8-1020(t), the facts found by the district court here were not independent of the determination in the adjudication of the DUI charges arising out of these same events. The disposition of the DUI charges obviously affected the license suspension imposed by the Department.

To summarize, the district court found that Weippert failed to signal his intent to turn as required by law. This is a traffic infraction. The DC-27 form was admitted into evidence and its validity is not challenged on appeal. Consequently, the traffic stop was legitimate. Further, the factors Meinzer discovered during his investigation and noted on the form are relevant. The district court did not address any factors outside of the traffic stop and the walk-and-turn test in its decision. Instead, it merely incorporated by reference the factual findings of the DUI court.

We reverse the district court's lifting of Weippert's license suspension and direct the Department to reinstate the suspension.

Reversed with directions.

15