No. 119,052

IN THE COURT OF APPEALS OF THE STATE OF KANSAS

STATE OF KANSAS,
*Appellant*,

v.

AARON MATTHEW LEES,
*Appellee*.

SYLLABUS BY THE COURT

1.

When the material facts supporting the district court's decision on a motion to suppress evidence are not in dispute, the ultimate question of whether to suppress is a question of law over which an appellate court has unlimited review.

2.

The Fourth Amendment to the United States Constitution protects citizens from unreasonable searches and seizures. A traffic stop is considered a seizure of the driver of the vehicle. To legally perform a traffic stop, a law enforcement officer must have a reasonable suspicion, requiring specific and articulable facts, that the driver committed or is about to commit a crime or traffic infraction. A traffic infraction is an objectively valid reason to effectuate a traffic stop.

3.

A law enforcement officer's objectively reasonable mistake of law by itself does not invalidate a traffic stop provided that the officer otherwise has reasonable suspicion for the stop under the totality of the circumstances.

4.

Interpretation of a statute is a question of law over which appellate courts have unlimited review.

5.

The most fundamental rule of statutory construction is that the intent of the Legislature governs if that intent can be ascertained. An appellate court must first attempt to ascertain legislative intent through the statutory language enacted, giving common words their ordinary meanings. When a statute is plain and unambiguous, an appellate court should not speculate about the legislative intent behind that clear language, and it should refrain from reading something into the statute that is not readily found in its words. Only if the statute's language or text is unclear or ambiguous does the court use canons of construction or legislative history to construe the Legislature's intent.

6.

When construing statutes to determine legislative intent, appellate courts must consider various provisions of the act *in pari materia* with a view of reconciling and bringing the provisions into workable harmony, if possible.

7.

Courts must interpret a statute in a way that makes it constitutional if any reasonable construction would maintain the Legislature's apparent intent.

8.

K.S.A. 8-1759a authorizes a Kansas highway patrol trooper to stop a vehicle for inspection and to issue a written notice of defect to the driver if the vehicle is in unsafe condition or if any required equipment is missing or is not in proper repair or adjustment.

Appeal from Sumner District Court; R. SCOTT MCQUIN, judge. Opinion filed November 16, 2018. Affirmed.

*Mitch Spencer*, assistant county attorney, and *Derek Schmidt*, attorney general, for appellant.

*C. Ryan Gering*, of Hulnick, Stang, Gering & Leavitt, P.A., of Wichita, for appellee.

Before STANDRIDGE, P.J., MALONE, J., and STUTZMAN, S.J.

MALONE, J.:  The State appeals the district court's decision granting Aaron Matthew Lees' motion to suppress. The district court found that a Kansas highway patrol trooper had no legal grounds to stop Lees' vehicle for a brake light violation because the vehicle's brake lights complied with Kansas law. The State claims the trooper's mistake of law about the brake light violation, if he made one, was objectively reasonable, so the mistake did not invalidate the traffic stop. The State also claims the traffic stop was lawful under the trooper's inspection power as authorized in K.S.A. 8-1759a. For the reasons stated below, we reject the State's claims and affirm the district court's judgment.

FACTUAL AND PROCEDURAL BACKGROUND

On July 10, 2017, around 11:13 p.m., Lees was leaving the Kansas Star Casino in Sumner County. Lees was driving and he had a female passenger. Just as Lees was leaving the casino and about to enter the Kansas turnpike, Kansas Highway Patrol Trooper Reed Sperry pulled him over because his "left-side brake light [was] out." Before informing Lees of the reason for the stop, Sperry instructed him to test his brake and blinker lights to see if they were working. The tests confirmed Sperry's belief that the left brake light was not functioning properly. Lees' vehicle had three separate brake lights, including the standard left and right brake lights, in addition to a top-middle brake light. The right and top-middle brake lights were both functional.

3

According to Sperry's arrest report, after he explained the reason for the stop to Lees, he noticed an odor of alcohol coming from the vehicle. Upon inquiry, Lees denied consuming any alcohol, but his passenger admitted to having a couple drinks. Sperry then asked for Lees' driver's license and proof of insurance. He provided an identification card. Sperry ran Lees' information and discovered that he was restricted to operating vehicles equipped with ignition interlock devices. There was no interlock device in Lees' vehicle.

Because it was illegal for Lees to operate his vehicle without an interlock device, Sperry asked the passenger to submit to a preliminary breath test (PBT) to determine if she could legally drive them home. The passenger failed the test. Sperry then questioned the passenger about whether Lees had really been drinking. The passenger said that Lees had, in fact, been drinking. When confronted with this new information, Lees admitted to consuming two beers at the casino and two beers earlier in the day. While speaking to Lees, Sperry noticed he had bloodshot, watery eyes.

Based on what had happened during the stop, Sperry asked Lees to submit to three standard field sobriety tests. According to the arrest report, Lees failed the tests. Sperry read Lees the PBT advisory, after which Lees took and failed the PBT. Sperry then arrested Lees for driving under the influence (DUI) and for driving without the ignition interlock device. Sperry did not issue a citation or warning for the defective brake light. Later, Lees blew a .085 on the Intoxilyzer 9000, putting him over the legal limit.

On July 19, 2017, the State charged Lees with DUI and operating a vehicle not equipped with an ignition interlock device. Lees filed a motion to suppress the evidence on January 2, 2018. In the motion, Lees argued that Sperry made a mistake of law, which, under *Martin v. Kansas Dept. of Revenue*, 285 Kan. 625, 639, 176 P.3d 938 (2008), rendered the stop in violation of the Fourth Amendment. Lees argued that the law required two working brake lights, and without counting the broken left brake light, Lees' vehicle still had two operational brake lights, the right and top-middle brake lights.

4

The State filed a written response to the motion and argued that based on appellate decisions filed after *Martin*, a law enforcement officer's traffic stop is not invalidated if it is based on an objectively reasonable mistake of the law and that Sperry committed a reasonable mistake of law on Lees' brake light violation. The State also argued that the good-faith exception to the exclusionary rule applied and that Lees voluntarily provided the evidence to be used against him. The State's written response did not argue that the traffic stop in question was authorized under K.S.A. 8-1759a.

On January 26, 2018, the district court held a hearing on the motion to suppress. Sperry was the only witness and he testified consistent with the above facts. Sperry admitted that he misunderstood the law about brake lights. He testified that he mistakenly believed that Lees' brake lights needed to be as widely spaced laterally as practicable and mounted at the same height. In other words, he thought that both the left and right brake lights had to be working and that the middle brake light did not count. Sperry testified that he stopped Lees for a brake light violation, and he said nothing about any intent to perform an inspection under K.S.A. 8-1759a.

During oral arguments, the State asserted that Sperry's mistake of law about the brake light violation was objectively reasonable, so the mistake did not invalidate the stop. The State also argued for the first time that K.S.A. 8-1759a grants uniformed highway patrol troopers the authority to stop vehicles for defective equipment and that Lees' defective left brake light provided grounds for a legal stop under that statute.

The district court filed a memorandum decision on February 9, 2018. The district court found that Sperry made a mistake of law on the brake light violation because the applicable statutes require only two working brake lights and Lees' vehicle satisfied this requirement. The district court also found that Sperry's mistake of law in this instance was not objectively reasonable. As for the State's argument under K.S.A. 8-1759a, the district court found as a matter of law "that the authority granted by this statute does not

5

extend to equipment that is outside what is already required by statute." Because Lees' brake lights complied with state law and posed no safety hazard, the district court found that K.S.A. 8-1759a did not authorize the stop. Finally, the district court found that the good-faith exception did not apply and that Lees did not voluntarily submit to providing any evidence. Thus, the district court granted Lees' motion to suppress the evidence. The State timely filed an interlocutory appeal.

On appeal, the State contends that the district court erred in granting the motion to suppress. The State first argues that the traffic stop was legal under Sperry's inspection power as authorized in K.S.A. 8-1759a. Second, the State argues that Sperry's mistake of law about the brake light violation was objectively reasonable, rendering the traffic stop lawful. We will address these arguments in reverse order. Lees contends that the district court did not err in granting his motion to suppress the evidence.

The standard of review for a district court's decision on a motion to suppress has two components. The appellate court reviews the district court's factual findings to determine whether they are supported by substantial competent evidence. In reviewing the factual findings, the appellate court does not reweigh the evidence or assess the credibility of witnesses. The district court's ultimate legal conclusion, however, is reviewed using a de novo standard. *State v. Hanke*, 307 Kan. 823, 827, 415 P.3d 966 (2018). When the material facts supporting the district court's decision on a motion to suppress evidence are not in dispute, the ultimate question of whether to suppress is a question of law over which an appellate court has unlimited review. 307 Kan. at 827.

WAS SPERRY'S MISTAKE OF LAW OBJECTIVELY REASONABLE?

The State claims the traffic stop was lawful under Sperry's inspection power as authorized in K.S.A. 8-1759a. But as to the Kansas statutes governing brake lights, the State does not dispute that Sperry made a mistake of law about whether Lees committed a

6

traffic infraction for a brake light violation. Still, the State argues that Sperry's mistake of law about the brake light violation was objectively reasonable, so the mistake did not invalidate the traffic stop. Lees argues that the district court correctly found that Sperry's mistake of law in this instance was not objectively reasonable.

The Fourth Amendment to the United States Constitution protects citizens from unreasonable searches and seizures. *State v. Sharp*, 305 Kan. 1076, 1081, 390 P.3d 542 (2017). A traffic stop is considered a seizure of the driver of the vehicle. *City of Atwood v. Pianalto*, 301 Kan. 1008, 1011, 350 P.3d 1048 (2015). To legally perform a traffic stop, a law enforcement officer must have a reasonable suspicion, requiring specific and articulable facts, that the driver committed or is about to commit a crime or traffic infraction. See K.S.A. 22-2402(1). A traffic infraction is an objectively valid reason to effectuate a traffic stop. *State v. Jones*, 300 Kan. 630, 637, 333 P.3d 886 (2014).

In Kansas, the requirements for stop lamps are set forth in K.S.A. 8-1708(a) which states that "[e]very motor vehicle . . . shall be equipped with two (2) or more stop lamps meeting the requirements of subsection (a) of K.S.A. 8-1721." K.S.A. 8-1721(a) states:

> "Any vehicle may be equipped and when required under this act shall be equipped with a stop lamp or lamps on the rear of the vehicle which shall display a red or amber light, or any shade of color between red and amber, visible from a distance of not less than three hundred (300) feet to the rear in normal sunlight, and which shall be actuated upon application of the service or foot brake, and which may, but need not, be incorporated with one (1) or more other rear lamps."

There are no other requirements in Kansas for brake lights. The State does not claim that Sperry correctly employed K.S.A. 8-1708(a) and K.S.A. 8-1721(a) to pull over Lees. The undisputed evidence shows that Lees' vehicle had two functional brake lights. Lees' right and top-middle brake lights both worked, but Sperry thought that Lees needed

operational left and right brake lights to comply with the law. Sperry made a mistake of law on whether Lees committed a traffic infraction for the brake light violation.

But in *Heien v. North Carolina*, 574 U.S. ___, 135 S. Ct. 530, 536, 190 L. Ed. 2d 475 (2014), the United States Supreme Court held that reasonable suspicion, as required for a traffic stop or an investigatory detention, can rest on a reasonable mistake of law. In that case, an officer stopped a vehicle for a broken brake light, believing the law required two working brake lights even though the applicable brake light statute required "*a* stop lamp on the rear of the vehicle." 135 S. Ct. at 535. But the same provision also stated that the "stop lamp may be incorporated into a unit with one or more other rear lamps." 135 S. Ct. at 535. Finding that the brake light statute was ambiguous and had never been interpreted by an appellate court, the *Heien* Court held that the officer's mistake of law was reasonable and did not invalidate the traffic stop. 135 S. Ct. at 540. Still, the *Heien* Court cautioned that "an officer can gain no Fourth Amendment advantage through a sloppy study of the laws he is duty-bound to enforce." 135 S. Ct. at 539-40.

The Kansas Supreme Court has adopted *Heien*'s holding. See *Pianalto*, 301 Kan. at 1013. In that case, the court ultimately found that an officer had committed a mistake of fact on whether a speed limit sign had been knocked down. 301 Kan. at 1015. But whether the case involves an officer's mistake of fact or law, it is the court's duty to determine whether the mistake was objectively reasonable under the totality of the circumstances in assessing reasonable suspicion for a traffic stop. 301 Kan. at 1015-16.

Applying *Heien* and *Pianalto*, the State asserts that Sperry's mistake of law about the brake light violation was objectively reasonable, rendering the traffic stop lawful. But as Lees points out in his brief, the statutes at issue in *Heien* differ from the statutes at issue here. In *Heien*, it was ambiguous how many functioning brake lights the statute required; but the Kansas statutes are clear that only two functioning brake lights are required. Reading K.S.A. 8-1708(a) and K.S.A. 8-1721(a) together, no reasonable officer

8

would think that the law required brake lights to be spaced laterally as far as practicable and mounted at the same height, as Sperry wrongly believed; neither statute suggests such a requirement in any way. Granted it may be reasonable for the average citizen to believe the law likely requires left and right brake lights, but law enforcement officers are not average citizens. They must reasonably study the laws they are duty bound to enforce. See *Heien*, 135 S. Ct. at 539-40.

In addition to the fact that the applicable Kansas statutes are unambiguous, the Kansas Supreme Court has previously interpreted them as well, over 10 years ago. In *Martin*, a driver's license suspension case, a law enforcement officer stopped a driver for having a malfunctioning brake light, although two other brake lights were working. The city ordinances that prompted the stop were identical to K.S.A. 8-1708 and K.S.A. 8-1721. The *Martin* court found that two operational brake lights were sufficient under Kansas law. 285 Kan. at 637. The court determined that an officer's mistake of law may invalidate a traffic stop under the Fourth Amendment. 285 Kan. at 639. But the court went on to conclude that the exclusionary rule did not apply to a driver's license suspension proceeding under the circumstances of the case. 285 Kan. at 639-46.

Even so, the State contends that several Kansas traffic statutes involving the location of a vehicle's lights creates ambiguity, transforming Sperry's mistake into an objectively reasonable one. The State points out that K.S.A. 8-1721(b) calls for a vehicle's blinker lights to be of even height and as widely separated laterally as practicable. The State argues that it is easy to confuse subsection (b) on blinker lights with subsection (a) of the same statute on brake lights. The State also directs our attention to other statutes that require vehicle lights to be of essentially equal height. See, e.g., K.S.A. 8-1705 (headlights); K.S.A. 8-1706 (taillights); K.S.A. 8-1722 (hazard lights). Finally, the State highlights the fact that to understand the brake light laws in Kansas, two statutes, K.S.A. 8-1708(a) and K.S.A. 8-1721(a), must be read together.

We are not persuaded by the State's arguments. As already stated, the applicable Kansas statutes on stop lamps unambiguously require only two functioning brake lights. Simply because there are other statutes requiring headlights and taillights to be of equal height should not confuse a law enforcement officer of the basic requirement that a vehicle in Kansas must have only two functioning brake lights. Sperry made the same mistake of law that the officer made over 10 years ago in *Martin*. Sperry is a law enforcement officer, not an average citizen, and he is expected to understand the laws that he is duty bound to enforce. See *Heien*, 135 S. Ct. at 539-40.

For these reasons, we agree with the district court's conclusion that Sperry's mistake of law in this instance was not objectively reasonable. Thus, the traffic stop in question was an unreasonable seizure in violation of Lees' Fourth Amendment rights. Unlike the *Martin* driver's license suspension case, the exclusionary rule applies herein to require suppression of the evidence resulting from the illegal stop. See *Wong Sun v. United States*, 371 U.S. 471, 491-92, 83 S. Ct. 407, 9 L. Ed. 2 441 (1963). In district court, the State argued that the good-faith exception to the exclusionary rule applied and that Lees voluntarily provided the evidence to be used against him, but the State has abandoned these arguments on appeal. See *State v. Arnett*, 307 Kan. 648, 650, 413 P.3d 787 (2018) (issues not briefed are deemed waived or abandoned).

WAS THE TRAFFIC STOP AUTHORIZED UNDER K.S.A. 8-1759a?

The State also claims the traffic stop was lawful under Sperry's inspection power as authorized in K.S.A. 8-1759a. The State raised this argument in district court in its closing argument at the hearing on Lees' motion to suppress. Lees responds that K.S.A. 8-1759a does not authorize a trooper to perform an inspection of non-functioning equipment that is beyond that required by law and does not otherwise render the vehicle unsafe. Lees also argues that K.S.A. 8-1759a does not apply because it was not Sperry's primary purpose for the traffic stop.

10

Resolution of the State's claim on appeal requires statutory interpretation. Interpretation of a statute is a question of law over which appellate courts have unlimited review. *State v. Collins*, 303 Kan. 472, 473-74, 362 P.3d 1098 (2015).

The most fundamental rule of statutory construction is that the intent of the Legislature governs if that intent can be ascertained. *State v. Jordan*, 303 Kan. 1017, 1019, 370 P.3d 417 (2016). An appellate court must first attempt to ascertain legislative intent through the statutory language enacted, giving common words their ordinary meanings. *State v. Barlow*, 303 Kan. 804, 813, 368 P.3d 331 (2016). When a statute is plain and unambiguous, an appellate court should not speculate about the legislative intent behind that clear language, and it should refrain from reading something into the statute that is not readily found in its words. 303 Kan. at 813. Only if the statute's language or text is unclear or ambiguous does the court use canons of construction or legislative history to construe the Legislature's intent. 303 Kan. at 813.

K.S.A. 8-1759a states:

"(a) Uniformed members of the highway patrol, at any time upon reasonable cause to believe that a vehicle is unsafe or not equipped as required by law, or that its equipment is not in proper adjustment or repair, may require the driver of such vehicle to stop and submit such vehicle to an inspection and such test with reference thereto as may be appropriate.

"(b) In the event a vehicle is found to be in unsafe condition or any required part or equipment is not present or in proper repair and adjustment, the member of the highway patrol shall give a written notice of such defect to the driver.

"(c) In the event any such vehicle is, in the reasonable judgment of the member of the highway patrol, in such condition that further operation would be hazardous, such member of the highway patrol may require, in addition, that the vehicle not be operated under its own power or that it be driven to the nearest garage or other place of safety.

"(d) Violation of this section is a class A misdemeanor."

11

K.S.A. 8-1759a is the companion statute to K.S.A. 8-1759 which authorizes spot inspections by the Kansas highway patrol requiring drivers to stop and submit to vehicle inspections at any location where signs are displayed giving notice of such inspections. Notably, K.S.A. 8-1759a only applies to "[u]niformed members of the highway patrol." K.S.A. 8-1759a(a). The statute does not authorize any other law enforcement officer such as a sheriff's deputy to conduct a traffic stop to inspect a vehicle's equipment.

K.S.A. 8-1759a(a) allows a trooper to stop a vehicle upon reasonable cause to believe (1) the vehicle is unsafe; (2) the vehicle is not equipped as required by law; or (3) the vehicle's equipment is not in proper adjustment or repair. K.S.A. 8-1759a(b) goes on to state that a trooper shall give a written notice to the driver if (1) the vehicle is found to be in unsafe condition; or (2) any *required* part or equipment is not present or in proper repair and adjustment. Under K.S.A. 8-1759a(c), a trooper may direct a vehicle to be towed or driven to the nearest garage in the event that the defect is hazardous. Finally, K.S.A. 8-1759a(d) makes a violation of the statute a class A misdemeanor.

K.S.A. 8-1759a was enacted in 1976 and only two cases have ever cited or discussed the statute. In *Davis v. Kansas Dept. of Revenue*, 252 Kan. 224, 230, 843 P.2d 260 (1992), our Supreme Court cited the statute for the limited purpose of noting that no specific statutory authority is required to stop a vehicle at a sobriety checkpoint. In *Fillmore v. Eichkorn*, 891 F. Supp. 1482 (D. Kan. 1995), the plaintiff, who was arrested and detained for more than 48 hours based initially on a broken taillight violation, sued Kansas highway patrol troopers and other correctional officers for civil rights violations. On a motion for summary judgment, the troopers argued that the initial stop was authorized under K.S.A. 8-1759a. The plaintiff argued that the troopers lacked reasonable suspicion for the stop because his broken taillight still complied with the Kansas statutory requirements for taillights. The district court noted that there were no Kansas cases directly on point to resolve the issue. 891 F. Supp. at 1488. But rather than attempting to

12

decide this unsettled point of Kansas law, the court granted summary judgment to the troopers based on qualified immunity. 891 F. Supp. at 1489-90.

Returning to our case, Sperry testified that he stopped Lees because his "left-side brake light [was] out." Sperry never testified that he intended to perform an inspection of Lees' vehicle under K.S.A. 8-1759a, and he never issued a citation or warning for the defective brake light. In rejecting the State's argument that the traffic stop was authorized under K.S.A. 8-1759a, the district court found as a matter of law "that the authority granted by this statute does not extend to equipment that is outside what is already required by statute." Because Lees' brake lights complied with state law and posed no safety hazard, the district court found that K.S.A. 8-1759a did not authorize the stop.

Putting aside the fact that Sperry had no subjective intent to stop Lees' vehicle for an inspection under K.S.A. 8-1759a, we will analyze the statutory language to determine if it provides any basis to authorize the stop in question. K.S.A. 8-1759a(a) authorizes a trooper to stop a vehicle for inspection upon reasonable cause to believe that the "vehicle is unsafe." But Sperry never testified that Lees' brake light defect posed a safety hazard. And the district court found that the "brake light malfunction posed little, if any, hazard to traffic." The State does not challenge this finding on appeal.

K.S.A. 8-1759a(a) also authorizes a trooper to stop a vehicle for inspection upon reasonable cause to believe that the vehicle is "not equipped as required by law." But for reasons we have already explained, Lees' brake lights complied with Kansas law, and Sperry's belief to the contrary was not objectively reasonable.

K.S.A. 8-1759a(a) also authorizes a trooper to stop a vehicle for inspection upon reasonable cause to believe that the vehicle's "equipment is not in proper adjustment or repair." The State's primary argument is that this provision authorized Sperry to stop Lees' vehicle for inspection even though the vehicle's brake lights complied with Kansas

13

law. The district court rejected this argument, as a matter of statutory construction, finding that the authority for a trooper to stop a vehicle under K.S.A. 8-1759a(a) "does not extend to equipment that is outside what is already required by statute." Stated differently, the district court construed the statute to mean that a trooper can stop a vehicle for inspection upon reasonable cause to believe that any equipment required by law is not in proper adjustment or repair.

The district court's interpretation of K.S.A. 8-1759a makes sense when the statute is construed as a whole. We note that the language of subsection (a) of the statute is broader than the language of subsection (b). K.S.A. 8-1759a(b) authorizes a trooper to issue a written notice of defect to the driver only if the vehicle is found to be "in unsafe condition" or if "any *required* part or equipment is not present or in proper repair and adjustment." (Emphasis added.) When construing statutes to determine legislative intent, appellate courts must consider various provisions of the act *in pari materia* with a view of reconciling and bringing the provisions into workable harmony, if possible. *State v. Keel*, 302 Kan. 560, Syl. ¶ 7, 357 P.3d 251 (2015). A trooper should not be permitted to stop a vehicle for inspection under K.S.A. 8-1759a for any equipment that is not in proper adjustment or repair unless the trooper is also allowed to issue a written notice of such defect to the driver. Reading K.S.A. 8-1759a(a) together with K.S.A. 8-1759a(b), it is reasonable to interpret the statute as authorizing a trooper to stop a vehicle for inspection and to issue a written notice of defect to the driver only if the vehicle is in unsafe condition or if any required equipment is missing or is not in proper repair or adjustment.

For example, a trooper may observe a vehicle with an open fuel hatch which is not in proper adjustment or repair. But an open fuel hatch presents no traffic infraction, nor does it impose a public safety hazard. See *State v. Gonzales*, 36 Kan. App. 2d 446, 453, 141 P.3d 501 (2006). Likewise, a trooper may observe a vehicle with a missing or loose hubcab which is not in proper adjustment or repair. But a missing or loose hubcab presents no traffic infraction, nor does it impose a public safety hazard. See *State v.*

14

*Marx*, 289 Kan. 657, 663, 215 P.3d 601 (2009). It would be unreasonable to construe K.S.A. 8-1759a to authorize a trooper to stop a vehicle for inspection for having an open fuel hatch or for having a missing or loose hubcab when these defects do not cause the vehicle to be unsafe and do not involve equipment that is required by law.

Moreover, courts must interpret a statute in a way that makes it constitutional if any reasonable construction would maintain the Legislature's apparent intent. *State v. Petersen-Beard*, 304 Kan. 192, 194, 377 P.3d 1127, *cert. denied* 137 S. Ct. 226 (2016). As previously stated, the Fourth Amendment protects citizens from unreasonable searches and seizures. A traffic stop is considered a seizure of the driver of the vehicle. *Pianalto*, 301 Kan. at 1011. Thus, any statute that authorizes a law enforcement officer to stop a vehicle must be consistent with the Fourth Amendment.

To the extent that K.S.A. 8-1759a(a) authorizes a trooper to stop a vehicle for inspection upon reasonable cause to believe that the "vehicle is unsafe," the statute is consistent with the Fourth Amendment because a valid public safety stop does not violate the Constitution. See *State v. Cleverly*, 305 Kan. 598, 605, 385 P.3d 512 (2016). And to the extent that K.S.A. 8-1759a(a) authorizes a trooper to stop a vehicle for inspection upon reasonable cause to believe that the vehicle is "not equipped as required by law," the statute is consistent with the Fourth Amendment because an investigatory detention based on a traffic infraction is a valid reason for a stop. See *Jones*, 300 Kan. at 637.

But to the extent that K.S.A. 8-1759a(a) authorizes a trooper to stop a vehicle for inspection upon reasonable cause to believe that the vehicle's "equipment is not in proper adjustment or repair," the statute falls outside a permissible stop under the Fourth Amendment—unless the vehicle is unsafe or not equipped as required by law. To keep K.S.A. 8-1759a(a) constitutional, the statute's third reason for a stop—"equipment is not in proper adjustment or repair"—must incorporate the safety and illegality requirements. Otherwise, to allow a trooper to stop and seize a driver to inspect the driver's vehicle

15

solely because its "equipment is not in proper adjustment or repair" would constitute an unreasonable seizure beyond what is permitted by the Fourth Amendment.

In sum, because Sperry's mistaken belief that K.S.A. 8-1708(a) and K.S.A. 8-1721(a) required functional left and right brake lights was objectively unreasonable, the stop of Lees' vehicle was invalid from the start. And we find that K.S.A. 8-1759a cannot be employed as an after-the-fact justification for the stop in this instance because the statute authorizes a trooper to stop a vehicle for inspection and to issue a written notice of defect to the driver only if the vehicle is in unsafe condition or if any required equipment is missing or is not in proper adjustment or repair. Under the circumstances here, the district court did not err in rejecting K.S.A. 8-1759a as a lawful basis for the stop, and we conclude the district court did not err in granting Lees' motion to suppress the evidence.

Affirmed.