No. 128,465

IN THE COURT OF APPEALS OF THE STATE OF KANSAS

STATE OF KANSAS,
*Appellant*,

v.

DENAIL RUSSELL WAYNE CARTER
*Appellee*.

SYLLABUS BY THE COURT

1.

When determining whether a driver has completed an unsafe lane change, law enforcement can calculate distance between vehicles using time. But a violation of the "two-second rule" without other evidence related to the safety of the maneuver does not create a reasonable suspicion that the driver has violated K.S.A. 8-1516(a) or K.S.A. 8-1522(a).

2.

Searches and seizures can be grounded on reasonable mistakes of fact. Such mistakes are rarely fatal to an officer's reasonable, articulable belief that an individual is violating the law.

3.

Searches and seizures can be based on mistakes of law. These mistakes often arise in the process of determining whether an officer has reasonable suspicion to believe a law has been violated. But police officers are presumed to know the law of the jurisdiction they enforce. Thus, failure to understand the law is not considered objectively reasonable

absent very special circumstances like reliance on settled judicial precedent or reliance on a law that has subsequently been declared unconstitutional.

Appeal from Geary District Court; KEITH L. COLLETT, judge. Oral argument held September 16, 2025. Opinion filed December 19, 2025. Affirmed.

*Ryan J. Ott*, assistant solicitor general, and *Kris W. Kobach*, attorney general, for appellant.

*Chris Biggs*, of Knopp, Biggs & Renz P.A., of Manhattan, for appellee.

Before ARNOLD-BURGER, P.J., HURST, J., and JACOB PETERSON, District Judge, assigned.

ARNOLD-BURGER, J.:  This case involves an interlocutory appeal by the State following the suppression of evidence obtained after a traffic stop. The issue centers on what evidence is necessary to establish an unsafe lane change under K.S.A. 8-1516(a) and K.S.A. 8-1522(a). The State argues that because the evidence supported a finding that there was less than two seconds of distance between the cars when the driver completed the passing maneuver, the lane change was unsafe as a matter of law. In the alternative, the State argues that if the officer's interpretation of the evidence necessary to establish the traffic violation was in error, the subsequent evidence obtained should be admitted under the good-faith exception to the warrant requirement. Because more evidence was required to establish a violation of K.S.A. 8-1516(a) or K.S.A. 8-1522(a) than the officer's calculation of distance using the two-second rule, and because we find the officer's interpretation of the law was unreasonable, we affirm the district court's suppression of the evidence.

## FACTUAL AND PROCEDURAL HISTORY

At 10 p.m. one evening, Geary County Sheriff Deputy Thomas Umeck began following a vehicle traveling on Interstate 70, watching for a traffic infraction and a

reason to stop it. As part of Geary County's drug interdiction efforts officers get alerts regarding the tag numbers of vehicles that have entered Kansas from another state. They then target those vehicles in order to find a reason to stop them and see if they are transporting drugs. This car was targeted as one that had entered Kansas from Colorado after a brief trip there the previous day.

Deputy Umeck ultimately pulled the car over for making an unsafe lane change. He identified Denail Russell Wayne Carter as the driver. The deputy later recovered 1.03 pounds of marijuana from the vehicle's trunk. The State charged Carter with one count each of possession of marijuana with the intent to distribute and no drug tax stamp. He was not charged with an unsafe lane change.

Carter moved to suppress the marijuana recovered on the basis that the facts did not support a violation of the law justifying the traffic stop. The court conducted a suppression hearing, which included testimony from Deputy Umeck and a dashcam video of the traffic stop. It is undisputed that the sole evidence supporting the alleged traffic infraction was a violation of what he termed the "two-second" rule. Umeck described the two-second rule as follows:

> "So basically, as long as I can see an object and I can see when the rear bumper of that object passes it and when the front of that vehicle reaches the same point, that and just based off the distance alone, I know that two seconds is approximately three vehicles in length between vehicles."

Deputy Umeck went on to explain that he was approximately a mile behind the vehicle when he initially made his observations. It took him approximately 50 seconds to catch up to the vehicle after he observed the lane change. No other vehicles were around except his, the passed vehicle, and Carter's vehicle.

3

Deputy Umeck testified that he either used the white lines on the roadway or distance to determine whether there was a distance of two seconds between the vehicles when Carter pulled back into the right lane. Even so, he testified that Carter signaled the lane change, and the brake lights on the overtaken vehicle never lit up.

The district court granted Carter's motion to suppress. The court found that the two-second rule categorically did not apply when one car passes another. Because the two-second rule did not apply to passing situations, the district court reasoned that Umeck did not have reasonable suspicion of a traffic violation and thus the marijuana evidence found in his trunk must be suppressed.

ANALYSIS

THE DISTRICT COURT DID NOT ERR IN GRANTING CARTER'S MOTION TO SUPPRESS

*Our standard of review is de novo.*

When reviewing a district court's ruling on a motion to suppress, an appellate court "reviews the district court's findings of fact to determine whether they are supported by substantial competent evidence and reviews the ultimate legal conclusion de novo." *State v. Cash*, 313 Kan. 121, 125-26, 483 P.3d 1047 (2021). An appellate court does "not reweigh the evidence, assess witness credibility, or resolve evidentiary conflicts." *State v. Boggess*, 308 Kan. 821, 825, 425 P.3d 324 (2018). The State bears the burden to prove the challenged search and seizure were lawful. K.S.A. 22-3216(2); *Cash*, 313 Kan. at 126. But where, as here, the significant facts are not in dispute, whether to grant or deny a suppression motion presents a question of law over which we have unlimited review. *State v. Guein*, 309 Kan. 1245, 1252, 444 P.3d 340 (2019).

4

*Unreasonable searches and seizures are prohibited.*

The United States and Kansas Constitutions do not permit unreasonable searches or seizures. U.S. Const. amend. IV; Kan. Const. Bill of Rights, § 15; see also, e.g., *State v. Thompson*, 284 Kan. 763, 772, 166 P.3d 1015 (2007).

"When a law enforcement officer conducts a routine traffic stop on a public roadway, a seizure of the driver occurs within the meaning of the Fourth Amendment to the United States Constitution and section 15 of the Kansas Constitution Bill of Rights." *Cash*, 313 Kan. at 126. Law enforcement officers may only begin a traffic stop based upon "specific and articulable facts raising a reasonable suspicion that such person has committed or is about to commit a crime," or a traffic infraction, as here. *State v. Ludes*, 27 Kan. App. 2d 1030, 1033, 11 P.3d 72 (2000) (citing *Terry v. Ohio*, 392 U.S. 1, 21, 88 S. Ct. 1868, 20 L. Ed. 2d 889 [1968]); see *State v. Pollman*, 286 Kan. 881, Syl. ¶ 3, 190 P.3d 234 (2008).

"'What is reasonable is based on the totality of the circumstances and is viewed in terms as understood by those versed in the field of law enforcement.'" *State v. Johnson*, 293 Kan. 1, 6, 259 P.3d 719 (2011).

> "'While "reasonable suspicion" is a less demanding standard than probable cause and requires a showing considerably less than preponderance of the evidence, the Fourth Amendment requires at least a minimal level of objective justification. . . . [Citation omitted.] The officer must be able to articulate more than an 'inchoate and unparticularized suspicion or "hunch"' of criminal activity. [Citation omitted.]" *Illinois v. Wardlow*, 528 U.S. 119, 123, 120 S. Ct. 673, 145 L. Ed. 2d 570 (2000).' [*State v.*] *Moore*, 283 Kan. [344,] 354-55, 154 P.3d 1 [2007]." *Johnson*, 293 Kan. at 6.

*Deputy Umeck had no reasonable suspicion to stop Carter for an unsafe lane change.*

There is no dispute that Deputy Umeck cited the two-second rule, and only the two-second rule, as the basis for the stop. Carter argued successfully to the district court that Umeck did not have reasonable suspicion of an unsafe lane change because the two-second rule does not apply when a driver passes another vehicle. So we turn to the statutes. Statutory interpretation presents a question of law over which appellate courts have unlimited review. *State v. Daniels*, 319 Kan. 340, 342, 554 P.3d 629 (2024).

Two Kansas statutes govern passing another vehicle on a highway. The first, K.S.A. 8-1516(a), speaks to how drivers must overtake vehicles and resume travel on the right side of the road: "The driver of a vehicle overtaking another vehicle proceeding in the same direction shall pass to the left thereof at a safe distance and shall not again drive to the right side of the roadway until *safely clear* of the overtaken vehicle." (Emphasis added.) In addition, "[a] vehicle shall be driven as nearly as practicable entirely within a single lane and shall not be moved from such lane until the driver has first ascertained that such movement can be made *with safety*." (Emphasis added.) K.S.A. 8-1522(a).

Umeck cited Carter's violation of the two-second rule as the one-and-only reason he believed Carter merged into the right lane too soon. When Umeck's justification is read in the context of the passing statutes, our task becomes clear. We must decide whether moving from one lane to another with less than two-seconds distance between vehicles—and nothing else—creates reasonable suspicion that Carter passed the other vehicle "unsafely" under K.S.A. 8-1516(a) and K.S.A. 8-1522(a).

As a matter of basic reasoning and logic, measuring distance by time (as with those using the two-second rule) can be useful. Drivers need sufficient time to react to changing conditions. Counting time between vehicles directly measures how long drivers

6

have to react to the behavior of other vehicles. Furthermore, timing vehicles passing a fixed point can be easier and more precise than trying to estimate speed or distance and extrapolate what an appropriate separation is from those two factors.

Indeed, the Kansas Supreme Court and the Tenth Circuit have endorsed the two-second rule when one vehicle is following another. In *State v. Moore*, 283 Kan. 344, 346, 349-51, 154 P.3d 1 (2007), the Kansas Supreme Court found that violation of the two-second rule (among other information) gave law enforcement reasonable suspicion that one vehicle was following another too closely. Similarly, in *United States v. Nichols*, 374 F.3d 959, 965 (10th Cir. 2004), *vacated and remanded on other grounds* 543 U.S. 1113, 125 S. Ct. 1082, 160 L. Ed. 2d 1054 (2005), and *conviction reinstated*, 410 F.3d 1186 (10th Cir. 2005), a trooper's "use of a two-second rule of thumb together with his calculation of the interval three separate times provided the 'minimal level of objective justification' required for reasonable suspicion justifying a traffic stop" for following too closely. See also *United States v. Linnell*, 93 F.4th 1102, 1106 (8th Cir. 2024) ("'[W]hen one car trails another by less than two seconds, an officer will generally have probable cause to believe that the trailing car is closer than what is reasonable and prudent.'"); *Levenson v. State*, 508 P.3d 229, 237 (Wyo. 2022) ("While we have approved the use of the two-second rule to determine if there is a traffic violation for following too closely, we must reiterate that this is not a bright-line rule that can always objectively justify a traffic stop.").

Yet Kansas courts have not considered the two-second rule in the passing context. That is important. Passing necessarily requires the passing vehicle to be travelling faster than the overtaken vehicle. Unlike following at a consistent speed where the distance between vehicles stays the same or gets smaller, while passing the distance between vehicles will only increase. Accordingly, *Moore* does not control our decision, and *Nichols* is unpersuasive.

7

Since we are unaware of any Kansas state appellate court decision that controls our ruling, we look elsewhere for guidance.

In *United States v. White*, 584 F.3d 935 (10th Cir. 2009), a Kansas State Trooper estimated that White merged into an overtaken vehicle's lane with less than one second between them. The trooper testified that "he saw the car being passed hit its brakes as White re-entered the right lane in front of it." 584 F.3d at 946. The district court found reasonable suspicion, and the Tenth Circuit affirmed. 584 F.3d at 946.

This case is different than *White*. The officer in *White* had additional evidence to determine the safety of the lane change. Specifically, the overtaken driver activated their brake lights, indicating that they perceived the passing vehicle's lane change to require them to alter their speed. We do not have that additional fact here. The only reason for the stop Umeck cited was a violation of the two-second rule. He provided no description of just how close the vehicles were. He did not describe how other vehicles reacted to the lane change. He did not even specify how much time he measured between vehicles. We do not know if the vehicles were one-half of a second apart, one second apart, or one-and-a-half seconds apart based on some fixed object at the side of the road. The importance of specificity is hammered home by just how much distance is covered by vehicles travelling 75 miles per hour in two seconds: nearly *75 yards* (distance equals speed multiplied by time). Yet all Umeck discussed was a violation of the two-second rule. Our de novo review of the dashcam video does not support a finding that Carter's lane change was unsafe. The overtaken vehicle did not use its brake lights to adjust its speed and there did not appear to be any swerving or sudden movements required. Carter appropriately used his turn signal.

A recent Colorado Supreme Court case more closely mirrors this one. See *People v. Barrera*, 517 P.3d 61 (Colo. 2022). Eduardo Rubio Barrera was in the right lane approaching an emergency vehicle on the shoulder. He changed lanes before passing the

emergency vehicle, as he was required to do under Colorado law. A state trooper happened to be right behind him at the time and stopped Barrera for making an unsafe lane change. Illegal drugs were located during a search of his car, evidence of which he moved to suppress based on a stop lacking reasonable suspicion.

Identical to the Kansas statute here, the Colorado statute required that a vehicle approaching a stationary emergency vehicle "'shall not be moved from such lane until the driver has first ascertained that such movement can be *made with safety*.'" 517 P.3d at 65. The State argued that "'made with safety'" is ambiguous, and therefore Trooper Bollen properly relied on the Colorado Driver's Handbook's "'three-second rule'" for following vehicles as an objective standard to determine whether Barrera safely changed lanes. 517 P.3d at 65. The Colorado Supreme Court was not persuaded.

> "[T]he lane-change statute contains no such rule, and the statute is not ambiguous. Furthermore, the Handbook is a regulatory material that doesn't interpret the statute and therefore has limited (if any) relevance to criminal violations." 517 P.3d at 65.

The court then held that "[m]ade with safety" has a plain and ordinary meaning: It requires the driver to ascertain that the specific circumstances on the road ensure the lane change doesn't cause danger. 517 P.3d at 65; see *safe*, Black's Law Dictionary 1606 (12th ed. 2024) (defining "safe" as "not causing danger"). It found, when looking at facts similar to ours:

> "[U]nder the totality of the circumstances, Barrera did not make the lane change 'until [he] first ascertained that such movement [could] be *made with safety*.' Importantly, Trooper Bollen did not tap on his brakes after Barrera activated his blinker, and nothing indicates that the SUV 'cut [him] off.' Instead, after changing lanes, the SUV quickly pulled ahead, creating a safe distance between the vehicles. In fact, Trooper Bollen sped up to eighty mph to catch the SUV before activating his overhead lights to stop the SUV.

9

These findings indicate that Barrera made the lane change with safety. [Citations omitted]." *Barrera*, 517 P.3d at 66.

See also *People v. Deaner*, 517 P.3d 66, 69 (Colo. 2022) (same facts, decided same day).

We have no trouble concluding that the district court was right. The two-second rule is not a "rule" in the legal sense. K.S.A. 8-1516 and K.S.A. 8-1522 only talk in terms of overall "safety." When determining whether a driver has completed an unsafe lane change, law enforcement can calculate distance between vehicles using time. But a violation of the "two-second rule" without other evidence does not create a reasonable suspicion that the driver has violated K.S.A. 8-1516(a) or K.S.A. 8-1522(a).

THE DISTRICT COURT DID NOT ERR IN REJECTING THE GOOD-FAITH EXCEPTION TO THE WARRANT REQUIREMENT

If law enforcement conducts an unreasonable search or seizure in violation of the United States or Kansas Constitution and finds incriminating evidence, that evidence may be suppressed or excluded by courts. See *State v. Baker*, 306 Kan. 585, 590, 395 P.3d 422 (2017). Neither the Fourth Amendment of the United States Constitution nor section 15 of the Kansas Constitution Bill of Rights expressly requires suppression of evidence for that reason. Instead, it is a judicially created remedy to discourage future, similar violations of constitutional rights by law enforcement. 306 Kan. 589-90; *State v. Daniel*, 291 Kan. 490, 496, 242 P.3d 1186 (2010).

That said, the United States Supreme Court and our Supreme Court have noted that the rule should only be applied when deterrence can be achieved.

"As with any remedial device, application of the exclusionary rule properly has been restricted to those situations in which its remedial purpose is effectively advanced. Thus, in various circumstances, the Court has examined whether the rule's deterrent effect will

10

be achieved, and has weighed the likelihood of such deterrence against the costs of withholding reliable information from the truth-seeking process. [Citations omitted.]" *Illinois v. Krull*, 480 U.S. 340, 347, 107 S. Ct. 1160, 94 L .Ed. 2d 364 (1987) (cited with approval in *Daniel*, 291 Kan. at 496).

With this in mind, courts have recognized an exception to this judicially created suppression rule known as the "good-faith exception." When an officer seizes evidence reasonably relying on a duly issued warrant or reasonably relying on a statute that is later declared to be unconstitutional, the exclusionary rule will not be applied to demand suppression of the evidence. See *Daniel*, 291 Kan. at 498. The officers are said to be acting in good faith, and the remedial purpose of the rule would not be fulfilled by suppression. Yet, this exception has been significantly expanded to other situations, including when an officer commits an objectively reasonable mistake of law or fact. And our Supreme Court has noted that which type of error it is, law or fact, constitutes a "threshold matter." *City of Atwood v. Pianalto*, 301 Kan. 1008, 1014, 350 P.3d 1048 (2015).

For example, when an officer believes that the resident has consented to the warrantless search of his home, but it turns out the person giving consent was not the resident, the search is still lawful because it was based on a reasonable mistake of fact. Likewise, if an officer mistakenly arrests a person reasonably matching a suspect's description, that mistake of fact will not result in suppression of the evidence obtained. "The limiting factor is that 'the mistakes must be those of reasonable men.'" *Heien v. North Carolina*, 574 U.S. 54, 61, 135 S. Ct. 530, 190 L. Ed. 2d 475 [2014]).

In *Pianalto*, the court examined an officer's mistake of fact. An Atwood police officer arrested Pianalto for going 28 mph in a 20-mph zone. During the stop he developed suspicion of intoxication and Pianalto was charged with driving under the

11

influence (DUI). But it turns out the speed limit sign had been knocked over, unbeknownst to the officer, making it actually a 30-mph zone. Pianalto moved to suppress the evidence of his intoxication and the Kansas Supreme Court held that the arresting officer made an objectively reasonable mistake of fact, so the motion to suppress was properly denied. 301 Kan. at 1016. Quoting from *United States v. Delfin-Colina*, 464 F.3d 392, 398 (3rd Cir. 2006), the Supreme Court noted that "'mistakes of fact are rarely fatal to an officer's reasonable, articulable belief that an individual was violating a traffic ordinance at the time of a stop . . . .'" *Pianalto*, 310 Kan. at 1015-16. But searches and seizures can also be based on mistakes of law, and these mistakes often arise in the process of determining whether an officer has reasonable suspicion to believe a law has been violated. See *Heien*, 574 U.S. at 61.

Aaron Lees was stopped leaving a casino because his left-side brake light was out. This ultimately resulted in his arrest for DUI. But it turns out Lees had three brake lights, and the statute he was charged with violating only required two operational brake lights. Because the officer's mistake of law regarding whether Lee had violated the statute was unreasonable, a panel of our court affirmed the district court's suppression of the evidence. The panel noted that the applicable Kansas statutes on stop lamps unambiguously require only two functioning brake lights. The officer was expected to know the laws he was duty bound to enforce. *State v. Lees*, 56 Kan. App. 2d 542, 549, 432 P.3d 1020 (2018).

In *State v. Oram*, 46 Kan. App. 2d 899, 914, 266 P.3d 1227 (2011), a panel of this court found that well-trained deputies in Kansas would not have believed in good faith that they had the authority to search a car after the defendant had been handcuffed, searched, and placed in the back seat of a patrol car. The statute in effect at the time limited searches to areas within such person's "*immediate presence*." (Emphasis added.) 46 Kan. App. 2d at 914.

In sum, a mistake of law occurs when an officer misinterprets or misapplies the law. These mistakes often arise in the process of determining whether an officer has reasonable suspicion to believe a law has been violated. But police officers are presumed to know the law of the jurisdiction they enforce. Thus, failure to understand the law is not considered objectively reasonable absent very special circumstances like reliance on settled judicial precedent or reliance on an objectively constitutional law that has subsequently been declared unconstitutional. See, e.g., *Davis v. United States*, 564 U.S. 229, 240, 131 S. Ct. 2419, 180 L. Ed. 2d 285 (2011) ("police acted in strict compliance with binding precedent, and their behavior was not wrongful"); *Krull*, 480 U.S. at 350 (finding that if an officer relies on a statute that is subsequently declared unconstitutional, excluding the evidence will not deter future Fourth Amendment violations by an officer so the exclusionary rule does not apply).

The State asks us to salvage Carter's conviction by applying a good-faith exception to the exclusionary rule, allowing admission of the marijuana on the basis that Umeck stopped Carter's vehicle based on a reasonable misapprehension of the law—a mistake of law.

The district court rejected this claim.

"This court cannot find that in this admittedly pretextual stop, misapplication of basic driving rules can constitute a good faith misunderstanding. The court finds that the officer had no 'minimal level of objective justification' to stop the Carter vehicle, See [*I.N.S. v.*] *Delgado*, 466 U.S. 210[, 104 S. Ct. 1758, 80 L. Ed. 2d 247] (1984). The fruits of the stop should be and are suppressed and excluded from evidence."

But the State argues that application of the two-second rule was a reasonable misunderstanding of the law, especially in light of caselaw applying it in cases of an infraction for following too closely under K.S.A. 8-1523. See *Moore*, 283 Kan. at 346.

13

Carter, on the other hand, emphasizes that Umeck's stop of his vehicle based solely on the two-second rule was not objectively reasonable.

Carter is correct. First, the statute is silent regarding any rigid two-second rule and focuses unambiguously on the safety of the maneuver. Evidence directly related to the safety of the movement is essential. Umeck's unyielding two-second rule essentially replaces a "safety" determination under K.S.A. 8-1516 and K.S.A. 8-1522, and flies in the face of the clear statutory language and common sense.

Second, although the good-faith exception may apply when officers rely on settled judicial precedent, reliance on Kansas caselaw interpreting the evidentiary requirements for a completely different statute—following, not passing—provides no shelter.

Moreover, such a rule does not make objective sense. Unlike a violation for following too closely, cars actually get further away from each other when passing. They must necessarily speed up to pass, thus pulling ahead of and away from the car they are overtaking. This is opposed to prolonged tailgating of a person at a distance that would prevent adequate stopping time—thus consideration of a two-second rule makes much more sense in that situation.

We are not persuaded by the State's argument that the good-faith exception to the warrant requirement saves this seizure. A mistake of law relates to the foundational and preliminary question of whether it was reasonable for an officer to suspect that the defendant's conduct was illegal. If it was, there is no Fourth Amendment violation at all—no exception needed. But we have already found Carter's lane change was not illegal because there was no indicia that it was unsafe. Umeck's interpretation of the law reads something into the statute that is not there. We conclude that it was not reasonable for him to believe Carter violated the law. Thus, the good-faith exception does not apply here.

14

CONCLUSION

We find that when determining whether a driver has completed an unsafe lane change, law enforcement can calculate distance between vehicles using time. But a violation of the "two-second rule" without other evidence related to the safety of the maneuver does not automatically create a reasonable suspicion that the driver has violated K.S.A. 8-1516(a) or K.S.A. 8-1522(a). Stopping a vehicle without such additional evidence is an unreasonable mistake of law.

With no additional evidence or detail, Umeck did not have reasonable suspicion that Carter violated the Kansas passing statutes. As a result, the district court was correct to suppress all evidence obtained as a result of the illegal stop.

Affirmed.