NOT DESIGNATED FOR PUBLICATION

No. 119,494

IN THE COURT OF APPEALS OF THE STATE OF KANSAS

STATE OF KANSAS,
*Appellee*,

v.

ETHAN RICHARD GARVEY,
*Appellant*.


MEMORANDUM OPINION

Appeal from Johnson District Court; THOMAS KELLY RYAN, judge. Opinion filed May 31, 2019. Affirmed.

*Rick Kittel*, of Kansas Appellate Defender Office, for appellant.

*Shawn E. Minihan*, assistant district attorney, *Stephen M. Howe*, district attorney, and *Derek Schmidt*, attorney general, for appellee.


Before MALONE, P.J., SCHROEDER, J., and MCANANY, S.J.


PER CURIAM: Ethan Garvey appeals his conviction for possession of methamphetamine and drug paraphernalia on grounds the district court erred in denying his motion to suppress the evidence. The record reflects Garvey was initially detained after being observed checking the doors of locked businesses in a strip mall around 4:15 a.m. Methamphetamine and drug paraphernalia were discovered on Garvey after police initially detained, arrested, and searched him. Substantial competent evidence supports the district court's decision to deny the motion to suppress. We affirm.

1

At approximately 4:15 a.m., Officer Matthew DeLoux of the Lenexa Police Department observed two individuals dressed in black clothing cross a street he was driving on and attempt to open doors of closed businesses at a strip mall. DeLoux estimated his distance to the individuals as 200 to 300 feet away when he observed them. DeLoux reported what he observed over the radio to other law enforcement officers, and Officer Benjamin Asplund, who was in a different vehicle, responded. Based on their training and experience as police officers, the officers believed the individuals were attempting to burglarize the strip mall's businesses. DeLoux observed the individuals walk behind the businesses before he arrived in the parking lot. Asplund drove behind the strip mall and was the first to make contact with Ethan Garvey, whom he believed was one of the individuals observed by DeLoux.

Asplund informed DeLoux he had made contact with Garvey who was wearing a black long-sleeved shirt, a red tank top, a black hat, black gloves, black boots, and carrying a black backpack. Asplund thought the gloves were odd because the weather was temperate and did not require gloves. Asplund approached Garvey to speak with him and told him to drop his backpack. He noticed Garvey spoke very quickly and acted very nervous, which Asplund believed indicated use of a stimulant. He also observed Garvey "blad[ing]" his body away from him, which he perceived as a preflight indicator.

Shortly after Asplund made contact with Garvey, DeLoux arrived. Asplund asked if Garvey was one of the individuals DeLoux had seen trying to get into buildings, and DeLoux said he was. DeLoux testified he had no doubt Garvey was one of the individuals he observed pulling on the door handles because he recognized the backpack and other articles of clothing worn by Garvey. At that point, Asplund told Garvey he was being detained and placed him in handcuffs. Garvey protested by saying he was not pulling on door handles, but DeLoux responded, saying: "I literally watched you do it." Asplund

then noticed Garvey's necklace contained a vial of what both officers agreed looked like methamphetamine. Both officers acknowledged they had not noticed the vial on the necklace until after they placed Garvey in handcuffs. The officers informed Garvey he was under arrest. After a further search of Garvey, the officers located a package of hypodermic needles in his right front pocket. They also found a folded dollar bill inside another pocket, which contained a substance they also thought was methamphetamine. Both the vial and dollar bill later tested positive for the presence of methamphetamine.

The State charged Garvey with possession of methamphetamine and possession of drug paraphernalia. Prior to trial, Garvey filed a motion to suppress the drugs and drug paraphernalia on the grounds it was found as the result of an illegal seizure. At the hearing on the motion to suppress, both DeLoux and Asplund testified, and Asplund's body camera recording of the incident was played for the district court. Both officers testified to their belief they had reasonable suspicion to detain Garvey.

DeLoux's initial suspicion of Garvey was based on the time being 4 a.m. and the individuals he observed pulling on door handles while wearing dark clothing. When he observed Garvey exhibiting signs of being under the influence of a stimulant—speaking very quickly, looking over his shoulder, quick movement of his hands, and his general demeanor—DeLoux believed detaining him was reasonable.

Asplund rationalized detaining Garvey based on multiple factors. The communication from DeLoux about individuals dressed in black trying door handles and DeLoux radioing that the individuals had gone to the north side of the building formed his initial suspicion. He noted Garvey's clothing generally matching the description of individuals dressed in black: the hat, shirt, gloves, and backpack. Given the incident occurred early in the morning with no other foot traffic in the area, he believed Garvey was one of the individuals DeLoux observed attempting to gain entrance into the businesses by pulling on door handles when the businesses were closed. After speaking

3

with Garvey and observing his extreme nervousness, he believed Garvey exhibited "preflight indicators." After DeLoux confirmed Garvey was one of the individuals he observed trying door handles, Asplund detained Garvey. Asplund testified he based his decisions on his experience and training as a police officer.

The district court denied Garvey's motion to suppress based on the testimony from the officers as well as the body camera footage. Combining the two officers' testimony, the district court found they possessed reasonable suspicion to make an investigative detention. The district court found "the officers acted upon reasonable, articulable suspicions, and it was a proper stop." The district court specifically based its decision on K.S.A. 22-2402. Following a bench trial, the district court found Garvey guilty as charged.

ANALYSIS

Garvey argues the district court erred when it denied his motion to suppress the methamphetamine found by police officers because the police officers found the drugs after illegally seizing him. In reviewing the grant or denial of a motion to suppress evidence, this court determines whether the factual findings underlying the district court's suppression decision are supported by a substantial competent evidence standard. The ultimate legal conclusions drawn from those factual findings are reviewed under a de novo standard. The appellate courts do not reweigh the evidence or reassess the credibility of the witnesses. *State v. Patterson*, 304 Kan. 272, 274, 371 P.3d 893 (2016). When the district court has denied a motion to suppress, the moving party must object to the introduction of that evidence at the time it was offered at trial to preserve the issue for appeal. *State v. Richard*, 300 Kan. 715, 726, 333 P.3d 179 (2014). Here, Garvey timely objected during the trial, thus the denial of his motion to suppress evidence was preserved for appeal.

4

Garvey argues the district court should have excluded the evidence because DeLoux and Asplund found it after they seized him without reasonable suspicion. Garvey contends the seizure was illegal and any evidence found following the illegal seizure must be excluded due to violating the Fourth Amendment of the United States Constitution under the "fruit of the poisonous tree" doctrine. See *Wong Sun v. United States*, 371 U.S. 471, 487-88, 88 S. Ct. 407, 9 L. Ed. 2d 441 (1963). The State argues reasonable suspicion existed to detain Garvey, and the vial of methamphetamine evidence was properly admitted under the plain view doctrine. Whether reasonable suspicion exists to support an investigatory detention is a question of law to which an appellate court applies a two tiered question standard of review—whether substantial competent evidence supports the district court findings, while the legal conclusion is reviewed de novo. *State v. Walker*, 292 Kan. 1, Syl. ¶ 5, 251 P.3d 618 (2011).

Reasonable suspicion to detain Garvey resulted from the collective knowledge between DeLoux and Asplund, and the plain view doctrine accordingly made the methamphetamine found on Garvey's necklace lawful evidence. "[A] law enforcement officer may stop any person in a public place whom such officer *reasonably suspects* is committing, has committed or is about to commit a crime and may demand of the name, address of such suspect and an explanation of such suspect's actions." (Emphasis added.) K.S.A. 22-2402(1). An officer may also frisk the subject for weapons if he reasonably suspects safety requires it. See K.S.A. 22-2402(2). The plain view doctrine enables admissibility of evidence when an officer intrudes into a constitutionally protected area and then spots and removes incriminating evidence. *State v. Fisher*, 283 Kan. 272, 292-99, 154 P.3d 455 (2007).

"In reviewing an officer's belief of reasonable suspicion, an appellate court determines whether the totality of the circumstances justifies the detention. The court makes its determination with deference to a trained law enforcement officer's ability to distinguish between innocent and suspicious circumstances, remembering that reasonable

5

suspicion represents a minimum level of objective justification which is considerably less than proof of wrongdoing by a preponderance of the evidence. However, the officer must be able to articulate more than an inchoate and unparticularized suspicion or hunch of criminal activity." *Walker*, 292 Kan. 1, Syl. ¶ 6.

There are generally four types of encounters between individuals and police: (1) voluntary or consensual encounters; (2) investigatory detentions; (3) public safety stops; and (4) arrests. *State v. Cleverly*, 305 Kan. 598, 605, 385 P.3d 512 (2016). Garvey's encounter was an investigatory detention based on reasonable suspicion, and he correctly argues he was seized. However, Garvey fails to show the seizure was unlawful. Substantial competent evidence shows the police officers reasonably believed Garvey either had committed or was about to commit a crime—burglary of a business. Thus, Garvey's detention was justified as an investigatory stop.

Garvey argues Asplund never personally observed anyone attempting to open doors on the strip mall, so no facts support a belief he was engaged in a crime. Garvey overlooks facts in the record and the collective knowledge doctrine.

The collective knowledge doctrine provides a police officer can "stop, search, or arrest a suspect at the direction of another officer or police agency, even if the officer himself does not have firsthand knowledge of the facts that would provide the necessary level of suspicion to permit the given action." *State v. Miller*, 49 Kan. App. 2d 491, 497, 308 P.3d 24 (2013) (citing *United States v. Williams,* 627 F.3d 247, 252 [7th Cir. 2010]). The doctrine applies when one officer acts based on the instructions from another officer. Application of the doctrine requires three conditions be met:

"'(1) [T]he officer taking the action must act in objective reliance on the information received; (2) the officer providing the information—or the agency for which he works— must have facts supporting the level of suspicion required, and (3) the stop must be no

6

more intrusive that would have been permissible for the officer requesting it.'" *Miller*, 49 Kan. App. 2d at 497.

The district court heard substantial competent evidence to support use of the collective knowledge doctrine to provide Asplund with reasonable suspicion to detain Garvey. Both DeLoux and Asplund testified at the hearing on Garvey's motion to suppress evidence, and the video footage from Asplund's body camera during the incident further supported the finding of reasonable suspicion. Asplund testified to stopping Garvey based on the communication from DeLoux. DeLoux testified he saw the individual he later identified as Garvey pulling on door handles, and DeLoux communicated the information to Asplund. Finally, the record reflects Garvey was not detained until DeLoux told Asplund that Garvey was the individual he saw pulling on door handles. When Garvey protested, DeLoux said: "I literally watched you do it." The officers then saw the vial of methamphetamine hanging around Garvey's neck in plain view immediately after placing Garvey in handcuffs. As such, both officers were present when Garvey was detained and they observed the vial containing methamphetamine on a chain around Garvey's neck. The stop was minimally intrusive to Garvey. The district court acknowledged collective knowledge of both officers in its finding of reasonable suspicion by stating:

> "I believe the combination of those two—the observations of these two officers provides reasonable suspicion to believe . . . the only person on foot in the area seen by these officers is Mr. Garvey.
>
> "All of that tied together is reasonable to make that investigative detention and to—for the officer's safety, to cuff Mr. Garvey."

Reviewing the totality of the circumstances from both Asplund's and DeLoux's perspective and giving deference to their training and experience as police officers provides reasonable suspicion to detain Garvey. See *Walker*, 291 Kan. 1, Syl. ¶ 6. Both Asplund and DeLoux articulated their belief Garvey was one of the individuals DeLoux

observed pulling on door handles, which DeLoux believed showed Garvey's intent to enter the closed businesses in the strip mall at around 4:00 in the morning.

Reasonable suspicion represents a minimum level of objective justification for detaining an individual, and both officers clearly articulated their reasons for detaining Garvey. The district court properly found reasonable suspicion existed to detain Garvey. The district court did not err in denying Garvey's motion to exclude the vial of methamphetamine found in plain view, and the drug paraphernalia was found after he was detained and placed under arrest for the vial and its alleged contents.

Affirmed.